THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDALL WAYNE STEVENS, Defendant-Appellant.

Fourth District    No. 4—99—0462

Opinion filed August 3, 2000.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Larry S. Mills, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

In 1993, a jury convicted defendant, Randall Wayne Stevens, of first degree murder (720 ILCS 5/9—1 (West 1992)), and the trial court

sentenced him to natural life in prison. In March 1996, this court affirmed defendant's conviction. *People v. Stevens*, No. 4—93—0725 (March 26, 1996) (unpublished order under Supreme Court Rule 23). In May 1999, defendant filed a motion for deoxyribonucleic acid (DNA) testing (725 ILCS 5/116—3 (West 1998), added by Pub. Act 90—141, § 5, eff. January 1, 1998 (1997 Ill. Laws 2461, 2461)), and the trial court summarily denied the motion. Defendant appeals, arguing that the trial court erred in denying his motion without holding a hearing. We affirm.

## I. BACKGROUND

Only the facts pertinent to this appeal, as stated in our 1996 decision, will be repeated here.

At trial, Catherine Porter and Josh Sandlin testified that on December 8, 1992, they met defendant, Frank Allen Rahm, and Dexter Patton at the Lincoln Lanes bowling alley and eventually they went to the Friendship Inn, where defendant rented a room. *Stevens*, slip order at 1.

Porter testified that while she was watching television, she heard defendant say, "Sacrifice." Defendant reached down and began choking Rahm, who had passed out during a card game, with one hand. He asked Patton for his knife, but Patton refused. Defendant began to choke Rahm with both hands while beating Rahm's head against a chair. Defendant choked Rahm with one hand while hitting Rahm's side with his other hand. Rahm was still lying on the ground, breathing hard. Defendant asked Sandlin to kick Rahm, and Sandlin complied. Defendant then began kicking Rahm.

Someone threw defendant a pillowcase, and defendant twisted it around Rahm's neck. Defendant pulled a telephone cord from the wall and used it to strangle Rahm. Sandlin testified that defendant first used the telephone cord and then the pillowcase to choke Rahm.

Eventually, Rahm stopped breathing. Patton asked defendant what he was going to do with the body, and defendant replied, "Watch." Defendant carried Rahm out of the hotel room (*Stevens*, slip order at 3) onto the third-floor balcony. He returned without the body. Porter testified defendant said, "I tried to throw him in the [D]umpster, but I missed." Sandlin testified that defendant said, "You should have heard the noise it made." Defendant, Porter, Sandlin, and Patton stayed in the room and were there when the police arrived to investigate Rahm's body, which had been found lying next to the hotel Dumpster.

Dr. Sharon Schnittker testified that Rahm suffered extensive external injuries to his head, neck, chest, and torso. The injuries to his neck were consistent with manual strangulation followed by the use of

a cord or ligature. Rahm's death was caused by blunt force trauma, with strangulation a contributing factor. Rahm's injuries were consistent with his being struck about the chest, strangled with hands and a cord, the upper portion of his head being hit against a chair, and his body being thrown from a height of 22 feet. *Stevens*, slip order at 3.

The jury found defendant guilty and the trial court sentenced him to natural life in prison. On direct appeal, defendant argued that the trial court erred in admitting autopsy photographs into evidence. This court affirmed.

In May 1999, defendant filed a *pro se* motion for DNA testing, pursuant to section 116—3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116—3 (West 1998)). Defendant requested DNA testing be performed on the bloody fingerprint found on People's exhibit No. 15, the pillowcase used to choke Rahm. Defendant asserted that the "testing is for the purpose of unequivocally establishing petitioner's actual innocence." Defendant conceded that the technology for this testing was available at the time of trial but argued that the evidence was not because he did not learn of the bloody fingerprint until the time of trial because of the State's discovery violation. The trial court summarily denied defendant's motion, finding that identity was not an issue in the case and the statute was therefore not applicable. This appeal followed.

## II. ANALYSIS

■ This court reviews *de novo* a trial court's decision made as a matter of law. *People v. Savory*, 309 Ill. App. 3d 408, 412, 722 N.E.2d 220, 223 (1999) (holding *de novo* review appropriate where the trial court's decision is based on the pleadings and a review of the transcripts, as opposed to witness credibility); see also *People v. Coleman*, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998) (dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo*). Because the trial court here summarily denied defendant's motion, we review that judgment *de novo*.

■ Section 116—3 allows a defendant to make a motion for "DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial." 725 ILCS 5/116—3(a) (West 1998). The defendant must present a *prima facie* case showing (1) identity was the issue at trial, and (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect. 725 ILCS 5/116—3(b)(1), (b)(2) (West 1998). A trial court shall

allow DNA testing under reasonable conditions upon determining that (1) the result of the testing has the "scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence"; and (2) the testing employs a method generally accepted within the relevant scientific community. 725 ILCS 5/116—3(c) (West 1998).

■ We affirm the denial of defendant's motion because (1) section 116—3 of the Code does not require that the trial court conduct a hearing on defendant's petition, (2) identity was not the issue in the trial that resulted in defendant's conviction, and (3) the blood he sought to have tested would not produce new, noncumulative evidence materially relevant to defendant's assertion of actual innocence.

Defendant argues that he was entitled to a hearing under the Code and the trial court erred in summarily denying his motion. He contends that, because the Code does not explicitly provide that the court may summarily dismiss a motion, it is required to hold a hearing. We disagree.

Statutory language is given its plain and ordinary meaning. *Savory*, 309 Ill. App. 3d at 413, 722 N.E.2d at 223. Section 116—3 does not state that a defendant is entitled to a hearing. Under defendant's interpretation of the statute, a trial court must hold a hearing on every motion regardless of the merits of the motion. Courts will not interpret a statute to guarantee a hearing as a matter of right without such language in the statute. See, *e.g.*, *Coleman*, 183 Ill. 2d at 381, 701 N.E.2d at 1072 (postconviction petitioner is not entitled to an evidentiary hearing as a matter of right); *People v. Chiakulas*, 288 Ill. App. 3d 248, 252-53, 681 N.E.2d 35, 37-38 (1997) (nothing in either statute (Unified Code of Corrections (730 ILCS 5/5—2—4(b) (West 1998)) and Mental Health and Developmental Disabilities Code (405 ILCS 5/3—814 (West 1998))) gives petitioner a right to a hearing). We conclude that defendant was not entitled to a hearing as a matter of right and the trial court properly denied defendant's motion.

Defendant asserts in his motion that identity "was the primary, if not the sole issue at trial." We disagree. Section 116—3(b)(1) requires as an element of a *prima facie* case that "identity was the issue in the trial which resulted in his or her conviction." 725 ILCS 116—3(b)(1) (West 1998). The identity of defendant was not the issue that resulted in defendant's conviction. Identity of the defendant was not disputed at trial. Defendant admitted in his statement to the police that he was in the hotel room with the victim and that he took the victim to the balcony. At trial, the State produced uncontradicted evidence that defendant was in the hotel room and that he took the victim to the balcony. Defendant's identity and presence simply were not issues at the trial.

In addition, DNA testing of the blood found on the pillowcase would not "produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence" (725 ILCS 5/116—3(c)(1) (West 1998)). When analyzing a claim of "actual innocence," this court does not determine whether defendant was proved guilty beyond a reasonable doubt. Rather, the term "actual innocence" limits the scope of section 116—3 to allow for scientific testing only where it has the potential to exonerate a defendant. *Savory*, 309 Ill. App. 3d at 414-15, 722 N.E.2d at 225; see also *People v. Gholston*, 297 Ill. App. 3d 415, 697 N.E.2d 375 (1998); *People v. Dunn*, 306 Ill. App. 3d 75, 713 N.E.2d 568 (1999).

Defendant asserts that if DNA testing is done on the blood found on the pillowcase it could show that someone else threw the victim's body from the balcony. We fail to understand defendant's logic. In this case, DNA testing of the blood on the pillowcase would not provide any evidence that a different individual threw the victim's body over the railing, therefore exonerating defendant. The presence of blood of defendant, the victim, or another of the individuals who were present in the hotel room on the pillowcase would not present any new evidence calling into question defendant's actions while in the hotel room. Defendant admits that he was in the hotel room and that he carried the body to the balcony. The State provided uncontradicted testimony that defendant beat and strangled the victim and took the victim to the balcony. Regardless of the results of the DNA testing, they would not produce evidence to demonstrate defendant's actual innocence. See *Gholston*, 297 Ill. App. 3d at 420, 697 N.E.2d at 379.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.