No. 3--03--0186 

(consolidated with 3-03-0715)

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2005

THE PEOPLE OF THE STATE OF    ) Appeal from the Circuit Court

ILLINOIS, ) of the 12th Judicial Circuit

                              ) Will County, Illinois   

Plaintiff-Appellee, )

) No. 99--CF--601

v. ) 

)    Honorable Carla Allessio-Goode

DUANE EDWARDS,                ) and                            

                              ) Honorable Stephen White,

Defendant-Appellant. ) Judges, Presiding.

JUSTICE SCHMIDT delivered the opinion of the court:

Duane Edwards, the defendant, was convicted of home invasion, unlawful restraint, criminal sexual assault, and two counts of aggravated criminal sexual assault on December 6, 1999, by a jury in Will County.  Later, the trial court merged all three sexual assault convictions into one count of aggravated criminal sexual assault.  The trial court sentenced the defendant to 20 years for home invasion, 20 years for aggravated criminal sexual assault, and 3 years for unlawful restraint.  On appeal, this court reversed the home invasion conviction and vacated one aggravated criminal sexual assault conviction and the non-aggravated criminal sexual assault conviction.  The sentence for the one remaining aggravated criminal sexual assault conviction remained intact and was not vacated by this court.  

The defendant filed a postconviction petition on November 26, 2002, which the trial court dismissed on January 28, 2003, as patently without merit.  The defendant also filed a petition for relief of judgment on July 10, 2003, pursuant to section 2--1401 of the Code of Civil Procedure (735 ILCS 5/2--1401 (West 2002)).  On July 28, 2003, the trial court dismissed the petition for relief of judgment.  The defendant now appeals the trial court's dismissal of his postconviction petition and his petition for relief of judgment, which have been consolidated into this appeal.  

BACKGROUND

On May 3, 1999, the defendant crawled through the window of the house of Dorothy Edwards, who at the time was married to the defendant.  Defendant grabbed Dorothy and put a knife to her back.  The defendant forced Dorothy, at knifepoint, to leave the house and go to her son's car.  When they got to the car, Dorothy screamed for help and kicked the knife out of defendant's hands.  Gilbert Palmer, who lived next door to Dorothy, testified that he heard the screaming and saw the defendant dragging Dorothy from her home to a car.  Both Dorothy and Gilbert testified that the defendant hit Dorothy several times in the face.  The defendant then drove Dorothy out of town to an empty cornfield where he ordered Dorothy to remove her dentures and shoes.  Defendant threw Dorothy's shoes out of the car, unzipped his pants, and told her "to suck it."  Defendant held Dorothy by the hair, pushed her face to his lap, and forced Dorothy to put her mouth on his penis.  After the defendant let Dorothy up, he hit her, and drove away.  Defendant then drove about two miles, turned onto a gravel road, and parked the car.  Defendant forced Dorothy to take off her clothes and have vaginal intercourse with him.  After that incident, defendant and Dorothy went to a park, talked for 20 minutes, and then went together to two different stores to try to get ice for Dorothy's swollen face.  Dorothy waited in the car while the defendant went into each store.  Dorothy admitted that she did not try to escape during the stops at the two stores.  

Defendant then drove Dorothy back to her house and went inside with her.  Back at the house, defendant ordered Dorothy to go to her bedroom and remove her clothes.  She just cried and cried, and he had sexual intercourse with her again.  Then the police came to the house and the defendant surrendered.  Dorothy was brought to the hospital by ambulance.  She was treated for swelling and bruising to her face.  A nurse and doctor conducted a sexual assault examination, including collecting rectal, vaginal, and oral swabs.  A forensic scientist testified that the sperm on the swabs collected from Dorothy matched the DNA from the defendant.

ANALYSIS

Defendant raises two issues on appeal.  The first is whether defendant's postconviction petition was properly summarily dismissed as frivolous and patently without merit.  The second issue is whether the trial court improperly summarily dismissed the defendant's petition for relief of judgment.

I. Postconviction Petition

The summary dismissal of a postconviction petition is reviewed 
de novo
.  
People v. Coleman
, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998).  The Post-Conviction Hearing Act (the Act) (725 ILCS 5/122--1 
et seq. 
(West 2002)) provides a remedy to criminal defendants who claim that substantial violations of their federal or state constitutional rights occurred in their original trial or sentencing hearing.  
People v. Guest
, 166 Ill. 2d 381, 655 N.E.2d 873 (1995).  Section 122--2.1 of the Act requires an initial review of a postconviction petition by the circuit court within 90 days after the petition has been filed and docketed.  725 ILCS 5/122--2.1 (West 2002).  Section 122--2.1(a)(2) provides for dismissal of petitions found to be frivolous or patently without merit at this first stage of the proceeding.  A summary dismissal pursuant to this section occurs prior to appointment of counsel and prior to an evidentiary hearing.  725 ILCS 5/122--2.1(a)(2) (West 2002).  

The purpose of a postconviction proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been and could not have been adjudicated.  
People v. Griffin
, 178 Ill. 2d 65, 72-73, 687 N.E.2d 820, 827 (1997).  
In order to avoid a summary dismissal based on a finding that a petition is frivolous or patently without merit, a petition must state the gist of a constitutional claim.  
People v. Griffin
, 178 Ill. 2d 65, 73, 687 N.E.2d 820, 827 (1997).  While considering a postconviction petition, the court may examine the court file of the proceeding, any action taken by an appellate court, and any transcripts of such proceeding.  725 ILCS 5/122--2.1(c) (West 2002).  When determining whether the petition raises a gist of a constitutional claim, the trial court should accept as true all well-pled facts not positively rebutted by the record.  
People v. Gaultney
, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996).  When the claims made in a postconviction petition are positively rebutted by the record, they should not be taken as true and the trial court may find that they are patently without merit and subject to summary dismissal.  
People v. Jefferson
, 345 Ill. App. 3d 60, 801 N.E.2d 552 (2003).  

Here, the defendant contends that his postconviction petition cannot be summarily dismissed because it alleged that his right to due process and his right to counsel were violated, both of which are constitutional claims.  

First, defendant argues in his postconviction petition that his right to due process was violated because the bodily harm that he inflicted upon the victim was too remote from the act of sexual assault.  A defendant commits aggravated criminal sexual assault if, during the commission of a criminal sexual assault, he causes bodily harm to the victim.  720 ILCS 5/12--14(a)(2) (West 1998); 
People v. White
, 195 Ill. App. 3d 463, 466, 552 N.E.2d 410, 412 (1990).  In order to sustain a conviction under section 12--14(a)(2), a defendant's acts causing bodily harm must be sufficiently close in time to the sexual acts in order for a court to find that they had been committed during the course of the assault.  
People v. Colley
, 188 Ill. App. 3d 817, 820, 544 N.E.2d 812, 814 (1989).  In his postconviction petition, the petitioner argues that the time lapse between the last time he struck his wife and the act of sexual intercourse was great enough that bodily harm cannot be said to have been inflicted during the course of the assault.  This court has rejected  arguments similar to the one defendant raises here.  

In 
People v. White
, 195 Ill. App. 3d 463, 552 N.E.2d 
410 (1990), the victim testified that the defendant hit her several 
times 
while they were downstairs in her residence, then the defendant followed her upstairs to her bedroom and sexually assaulted her.  In 
White
, this court found that the period between the beatings and the sexual assault was sufficiently close so that the beatings could be found to have been committed during the commission of the sexual assault.  
People v. White
, 195 Ill. App. 3d at 467, 552 N.E.2d at 412.  

In 
People v. Colley
, the defendant cut the victim with a pocketknife soon after completion of a sexual assault.  On appeal, the defendant argued that the infliction of injury occurred subsequent to the sexual assault and was too removed in time to be considered part of the same course of conduct.  This court rejected that argument, stating that the injury occurred sufficiently close in time to the sexual acts.  
People v. Colley
, 188 Ill. App. 3d at 820, 544 N.E.2d at 814.  In 
People v. Lamon
, this court again noted that "What is significant is not the order in which the forced intercourse and assault occurred, but that defendant sexually assaulted the victim and the infliction of the bodily injury occurred during or as a part of the commission of that forcible rape."  
People v. Lamon
, 346 Ill. App. 3d 1082, 1091, 805 N.E.2d 271, 278 (2004).  

Here, the defendant dragged the victim to the car where the sexual assaults took place.  The defendant hit the victim several times in the car prior to the first sexual assault and then again right after he finished the first sexual assault.  We therefore find that there was sufficient evidence in the record to prove that the bodily harm was contemporaneous to the criminal sexual assault.    

The second issue that defendant raises in his postconviction petition that he claims is a constitutional issue is prosecutorial misconduct.  The defendant claims that he was deprived of a fair trial and, therefore, his due process rights were violated during closing argument when the prosecutor asked the jurors to convict the petitioner as a stand against "vicious criminals."  The defendant also claims that the prosecutor's references to one of the witnesses' occupation as a Baptist minister and statement that he would not lie were also prosecutorial misconduct and denied the defendant of a fair trial.

A prosecutor's statements based on facts and evidence or upon reasonable inferences from evidence are within the scope of proper closing argument.  
People v. Myers
, 246 Ill. App. 3d 542, 616 N.E.2d 633 (1993).  The record shows that defendant's attorney invited the complained-of rebuttal argument by the prosecutor regarding Gilbert Palmer, the Baptist minister.  In his closing argument, defense counsel attacked the credibility of Gilbert Palmer by stating that even though he is a pastor, he added things in his testimony that he did not tell the police officer and that there is an inconsistency between what the police officer said and what Gilbert Palmer said.  Defense counsel told the jury that "It's up to you who you believe."  The prosecutor's rebuttal argument did not vouch for the credibility of the witness; rather, it was an invited comment based upon defense counsel's attack on the witness's credibility.

Although the prosecutor's comment that "Society is entitled to be protected from vicious criminals" may be a bit more problematic, it was an isolated comment.  It does not constitute a pattern of intentional prosecutorial misconduct, which might have had a cumulative effect that created unfair prejudice to the defendant.  
People v. Johnson
, 208 Ill. 2d 53, 803 N.E.2d 405 (2003).

The third issue defendant raises in his petition, which he claims is a constitutional issue, is ineffective assistance of trial counsel and appellate counsel.  To succeed on an ineffective assistance of counsel claim, a defendant must show that his counsel was deficient and that he was prejudiced by the deficiency.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); 
People v. Richardson
, 189 Ill. 2d 401, 727 N.E.2d 362 (2000).  There is a strong presumption that counsel was effective and that his or her action or inaction was the product of sound trial strategy.  
Richardson
, 189 Ill. 2d at 411, 727 N.E.2d at 369.  To show prejudice, defendant must prove that there is a reasonable probability that, but for counsel's own professional errors, the result of the proceeding would have been different.  
Richardson
, 189 Ill. 2d at 411, 727 N.E.2d at 369.  Both prongs of the 
Strickland
 test, deficiency and prejudice, must be shown to establish the ineffective assistance of counsel, and the failure to establish either of these prongs will be fatal to a defendant's claim.  
Richardson
, 189 Ill. 2d at 411, 727 N.E.2d at 369.  The 
Strickland
 test is also applied when determining the adequacy of appellate counsel.  
Richardson
, 189 Ill. 2d at 412, 727 N.E.2d at 369-70.  Effective assistance of counsel does not mandate that appellate counsel raise every conceivable argument, and appellate counsel is not constitutionally deficient unless he is patently wrong.  
Richardson
, 189 Ill. 2d at 412, 727 N.E.2d at 370.  A defendant who claims that appellate counsel was ineffective must show that the failure to raise an issue on appeal was objectively unreasonable and this decision prejudiced the defendant.  
People v. Flores
, 153 Ill. 2d 264, 283, 606 N.E.2d 1078, 1087 (1992).  Normally, appellate counsel's choices concerning which issues to pursue are entitled to substantial deference.  
People v. Mack
, 167 Ill. 2d 525, 658 N.E.2d 437 (1995).  Appellate counsel need not brief every conceivable issue and may refrain from developing nonmeritorious issues without violating 
Strickland
.  
People v. Simms
, 192 Ill. 2d 348, 736 N.E.2d 1092 (2000).  Defendant suffers no prejudice unless the underlying issues are meritorious.  
People v. Easley
, 192 Ill. 2d 307, 736 N.E.2d 975 (2000).  

In his petition, defendant alleges that trial and appellate counsel were ineffective because they failed to argue the insufficiency of the proof of bodily harm and the prejudicial arguments by the prosecution were misconduct.  First, defendant's contention that his trial counsel did not contest the sufficiency of the evidence of bodily harm is incorrect.  Trial counsel moved for a directed verdict, asserting that no bodily harm was caused to the alleged victim at the time she was allegedly penetrated.  Trial counsel also argued to the jury that the victim was not credible and there was no evidence of bodily injury.  Furthermore, defense counsel filed a motion for a new trial claiming that the evidence had been insufficient to prove the defendant's guilt and appellate counsel raised the issue of the sufficiency of the evidence on direct appeal.  

Defendant further contends that his trial and appellate counsel were ineffective for failing to preserve and to raise on direct appeal allegations of prosecutorial misconduct.  As previously discussed, we do not believe that the prosecutor's comments during closing argument rise to the level of prosecutorial misconduct that would have deprived the defendant of a fair trial, and therefore, we find that counsel was not ineffective for failing to preserve and to raise this issue on direct appeal.  We find that the trial court properly dismissed the petition for postconviction relief as frivolous and patently without merit.

II. Petition for Relief from Judgment

Defendant claims that the trial court committed reversible error when it treated defendant's petition for relief from judgment, filed pursuant to section 2--1401, as a postconviction petition and summarily dismissed the petition as patently without merit under procedures of the Act.  Whether the trial court complied with the applicable procedure is a question of law; therefore, our review is 
de novo
.  
Woods v. Cole
, 181 Ill. 2d 512, 516, 793 N.E.2d 333, 335 (1998); 
People v. Bramlett
, 347 Ill. App. 3d 468, 472, 806 N.E.2d 1251, 1254 (2004); 
People v. Pearson
, 345 Ill. App. 3d 191, 193, 802 N.E.2d 386, 388 (2003). 

First, despite the State's argument to the contrary, it is clear from the record that the trial court treated the defendant's section 2--1401 petition as a postconviction petition and summarily dismissed it as patently without merit pursuant to the procedures of the Act.  The court's "Order for Dismissal" filed July 28, 2003, specifically states that its review is "pursuant to Chapter 725 ILCS 5/11--2.1," that it is reviewing a "petition for postconviction relief," and that the allegations in this petition are "patently without merit and fail to raise a sufficient constitutional question upon which relief can be granted."  This order was entered just six days after the petition for relief from judgment was filed without notice to the defendant, his presence, or granting him an opportunity to be heard.  The defendant's petition was clearly entitled "Petition for Relief from Judgment (pursuant to 735 ILCS 5/2--1401(f))" and the petitioner repeated the statutory authority for his petition in the body of the pleading.  Even though the trial court subsequently referred to the defendant's pleading as a "petition for relief" in a subsequent hearing, this clarification does not change the way the trial court treated the pleading when it summarily dismissed it in its order of July 28, 2003.  

The key issue here is whether a trial court may summarily dismiss the petition for relief of judgment pursuant to section 2--1401 in the same manner that it summarily dismisses a postconviction petition under the procedures of the Act.  There is a split of authority on this subject within the appellate court.  The Fourth District first extended the summary dismissal procedure beyond the Act into other procedures that collaterally challenge convictions in 
Mason v. Snyder
, 332 Ill. App. 3d 834, 774 N.E.2d 457 (2002).  The 
Mason
 court held that by their inherent authority to protect their dockets from vexatious and frivolous pleadings, the trial courts could summarily dismiss inmates' 
mandamus
 petitions.  
Mason v. Snyder
, 332 Ill. App. 3d at 842, 774 N.E.2d at 463-64.  In support of this position, the 
Mason
 court cited two cases where the appellate court had approved of the trial court's 
sua sponte 
dismissals of civil complaints that failed to state valid claims.  The 
Mason
 dissent, however, argued that the introduction of the summary dismissal procedure into 
mandamus
 proceedings was a decision for the legislature, not the courts.  
Mason v. Snyder
, 332 Ill. App. 3d at 845, 774 N.E.2d at 466 (Cook, J., dissenting).  

Next, the Second District in 
People v. Gaines
, 335 Ill. App. 3d 292, 780 N.E.2d 822 (2002), held that the trial courts did not have the authority to summarily dismiss section 2--1401 petitions.  The 
Gaines
 court emphasized that the Post-Conviction Hearing Act and section 2--1401 were "separate and distinct remedial provisions."  
Gaines
, 335 Ill. App. 3d at 295, 780 N.E.2d at 825.  The court found that although summary dismissal was available under the Act, it was not an option for a section 2--1401 petition.  The court noted that a section 2--1401 petition is similar to a complaint in a civil action, which "the opponent must either move to dismiss *** or *** answer."  
Gaines
, 335 Ill. App. 3d at 296, 780 N.E.2d at 825.  

Since then, the Second District has concluded that summary dismissal is an invalid procedure in 
mandamus 
proceedings.  
People v. Shellstrom
, 345 Ill. App. 3d 175, 802 N.E.2d 381 (2003).  The Second District reaffirmed its holding in 
Gaines
 in  
People v. Pearson
, 345 Ill. App. 3d 191, 802 N.E.2d 386 (2003),  appeal pending, No. 97832.  In 
Pearson
, the court observed that the "process of judicial review of a petition under the Act--without comment by either party--is a significant and unusual departure from the adversary process.  The legislature has mandated that departure in the specific context of the [Post-Conviction Hearing] Act.  We see no possible basis for importing such an unusual procedure into matters governed by the Code of Civil Procedure."  
Pearson
, 345 Ill. App. 3d at 194, 802 N.E.2d at 389.  The 
Pearson
 court rejected the State's request to conduct a harmless error analysis of the summary dismissal of a section 2--1401 petition, reasoning that only fundamentally proper proceedings are subject to a harmless error analysis.  
Pearson
, 345 Ill. App. 3d at 196, 802 N.E.2d at 390.

The Fourth District, however, was unpersuaded by the Second District's cases and expanded its holding in 
Mason
 to section 2--1401 petitions in 
People v. Bramlett
, 347 Ill. App. 3d 468, 806 N.E.2d 1251 (2004).  In 
Bramlett
, the court held that a trial court may 
sua sponte 
dismiss a section 2--1401 petition if it is frivolous and without merit.  

The First District, however, disagreed with the 
Bramlett 
court, finding that there should not be any procedure for summary dismissal outside of the Act.
  People v. Anderson,
 352 Ill. App. 3d 934, 941-42 (2004).  The First District reasoned that it is unfair for a litigant to be deprived of notice of a proposed dismissal of his action and an opportunity to respond, as was done here when the trial court summarily dismissed defendant's petition.  The court noted that notice of impending judicial action and the opportunity to be heard prior to that action are fundamental principles of justice. 
People v. Anderson, 
352 Ill. App. 3d at 942; 
People v. Rendhava
, 313 Ill. App. 3d 1, 12, 729 N.E.2d 75, 83 (2000).  The court held that notice and opportunity to be heard prior to dismissal are mandatory and do not infringe on the trial court's inherent authority to 
sua sponte 
dismiss pleadings that fail to state valid claims.  The First District court noted that the Fourth District court has mistaken 
sua sponte 
dismissal to mean summary dismissal under the Act.  The two terms are not equivalent.  
Sua sponte 
action means only that the court initiates a motion, which then follows the otherwise applicable procedures, including notice of the proposed judicial action and the opportunity to argue against such action, as required in fairness to the litigants.  
People v. Anderson, 
352 Ill. App. 3d at 943
; 
Stern v. Superior Court
, 105 Cal. App. 4th 223, 231-32, 129 Cal. Rptr. 2d 275, 281 (2003).  The First District noted that although the trial court may have the inherent power to dismiss 
sua sponte 
nonmeritorious claims on their pleadings, it does not have the authority to treat a section 2--1401 petition as a 
postconviction petition and summarily dismiss it under the procedures of the Act without notice to the litigants and the opportunity to be heard on the issues.  
Anderson
, 352 Ill. App. 3d at 943-44.  
We agree with the dissent in 
Mason
.  
Mason v. Snyder
, 332 Ill. App. 3d at 845, 774 N.E.2d at 466 (Cook, J., dissenting).  The summary procedures under the Act were specifically set by the legislature.  It is not our role to make these procedures available under other circumstances.  It is up to the legislature to do so if it sees fit.

A trial court may not summarily dismiss a section 2--1401 petition for relief of judgment; doing so is reversible error.  Therefore, we reverse the decision of the trial court to summarily dismiss the defendant's petition for relief from judgment and remand the matter to the circuit court for further proceedings.  

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed in part, reversed in part and remanded.    

Affirmed in part and reversed in part; cause remanded.

McDADE, J., specially concurs.

HOLDRIDGE, J., concurs in part and dissents in part.

JUSTICE HOLDRIDGE, concurring in part and dissenting in part:

Because I would affirm the order of the trial court in total, I respectfully dissent from that portion of the order remanding the matter for further proceeding on the 2--1401 petition.  For the reasons articulated by the majority in 
Mason v. Snyder
, 332 Ill. App. 3d 834, 845-846 (2002), I would hold that the trial court could, within its inherent authority to control its docket, dismiss the defendant’s 2--1401 petition. 

JUSTICE McDADE, specially concurs:

I concur in the result reached in this case.  I write separately to state my objection to one part of the analysis of the issue of prosecutorial misconduct because I think it creates a distinctly false impression.

The decision, tracking the argument of the appellate prosecutor, states: "The prosecutor’s rebuttal argument did not vouch for the credibility of the witness, rather it was an invited comment based upon defense counsel’s attack on the witness’ credibility."  In point of fact, the argument did vouch for the credibility of the witness -- actually two witnesses.

The prosecutor stated:

"Look who we are talking about, a Baptist minister.  Do you think a Baptist minister is going to come into court and lie?

* * *

Mr. Palmer isn’t lying and neither is the police officer."

The State tries to justify these clearly improper comments by saying the defense "invited" them.

There is nothing improper in defense counsel’s argument.  He said:

"Mr. Palmer, you know, I probably offended people by cross-examining him, but it just happens to be he’s a pastor.  But I still have to cross-examine him.  The thing that he did is not only did he testify...he also kind of like added things...[he]e also said a lot more to you than he said to Officer O’Connor...there is an inconsistency with what Officer O’Connor says and what the pastor says...[s]o its (sic) up to you who you believe."

Defense counsel attacked the credibility of the witness by calling attention to discrepancies and inconsistencies in what the witness said in an earlier statement and his testimony at trial, and told the jury it was up to them to decide who to believe.

What his argument "invited" was rebuttal in kind; rebuttal that the prosecutor did, in fact, offer when he said, immediately after the improper comments:

"The fact that he didn’t tell the police officer something that day didn’t mean it didn’t happen.

"Think about it ladies and gentlemen.  Gilbert Palmer is a minister, a religious man.  He’s not a police officer.  He’s just seen a crime occur.   Don’t you think that that shocked and surprised him?  It would shock and surprise anyone.  When he’s talking to the police that day and they are interviewing him on the street, don’t you think it’s possible that he might have forgot (sic) to mention that besides the beating he saw her in the car, for instance?  Just because someone didn’t tell it to the police that day doesn’t mean it didn’t happen."

The prosecutor engaged in misconduct when he vouched for the credibility of the witness (Mr. Palmer isn’t lying and neither is the police officer) and did so based on his status (Do you think a Baptist minister is going to come into court and lie?)  It would be no less improper even if defense counsel had flatly stated that the witness was lying -- which was not done.

I am concurring because I think that, in context, the misconduct was probably lost in the ensuing appropriate argument and was, therefore, harmless.  But misconduct it was.