SIXTH DIVISION
April 14, 2006

No. 1-04-2154

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN O'CONNELL, | ) | Honorable |
| | ) | Stanley Sacks, |
| Defendant-Appellant. | ) | Judge Presiding |

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

John O'Connell, who pled guilty in 1992 to a murder charge, moved for evidentiary DNA testing in 2004. The trial court dismissed the motion *sua sponte* and without giving defendant an opportunity to argue in support of his motion. We hold that the statute that permits motions for postconviction DNA testing does not allow summary dismissal of such motions without notice to the defendant. Because defendant presented evidence that he had no memory of the offense when he pled guilty, and he pled guilty based solely on the strength of the evidence against him, counsel might have been able to argue persuasively for construing the statute to permit DNA testing under the circumstances of this case. Thus, we cannot consider the procedural error harmless. Accordingly, we reverse and remand for further proceedings on defendant's motion, with proper notice to defendant.

BACKGROUND

On September 7, 1990, around 1 p.m., a police officer

responding to an emergency call found Toyoko Hirai naked and bleeding profusely on the floor of a flower shop. Paramedics undertook emergency measures to save Hirai. After a brief discussion with two men at the scene, the officer went to a nearby tavern where he found defendant sitting in bloodied clothes. The officer escorted defendant out of the tavern. One of the men at the scene said he saw defendant leave the flower shop shortly before 1 p.m. The officer found more than $150, including more than $10 in coins, in defendant's pockets. Another officer found marks on the cash register in the flower shop indicating that someone had pried the register open. Blood smears covered the register. Officers also found a bloody knife in defendant's van.

Later that day an assistant State's Attorney wrote out a statement defendant signed before falling asleep. Pictures taken at the time defendant signed the statement show his bloodshot eyes. When Hirai died prosecutors charged defendant with first degree murder, aggravated criminal sexual assault and armed robbery. The court denied defendant's motion to suppress the written statement. Defendant then pled guilty to the charges.

The prosecutor presented a factual basis for the plea. According to the written statement, defendant arrived at the tavern near the flower shop around 10 a.m., and he began drinking tequila and beer. He left around 12:30 p.m. and went to the flower shop. He threatened Hirai with the knife to coerce her to

have sexual intercourse with him.  He used the knife to pry open the cash register.

A witness who saw defendant leaving the store found Hirai bleeding on the floor.  The witness and another man ran after defendant.  They caught up with defendant at his van and brought him back to the flower shop.  One witness called the police and the other went to look in on Hirai.  Defendant wandered out of the shop back to the tavern, where the officer found him a few minutes later.

The prosecutor told the court that the blood on defendant's clothes came from Hirai.  The prosecutor did not detail the scientific evidence for the claim.

Several of defendant's relatives testified in mitigation about defendant's terrible childhood, his good nature, and the effect of alcohol on his actions.  Defendant's wife testified that defendant screamed at her and struck her when he was drunk.  When he did so he usually passed out and when he awoke he would remember nothing about the incident.  She said that on the morning of the murder, defendant smoked some "wicky sticks," which are marijuana cigarettes laced with stronger narcotics "[l]ike PCP, Angel Dust, LSD."  A bartender confirmed that defendant stayed in the tavern, drinking, from 10 a.m. that morning until some time after 12:30 p.m.

Defendant told the court that he did not remember anything about the crime.  He hoped for a chance to warn others about the

1-04-2154

evil effects of alcohol. A psychologist explained that alcoholics, when drunk, can appear to be fully aware of what they are doing. "But once they lose consciousness, either going to sleep or falling unconscious because of the degree of intoxication, upon awakening they really have no recall as to what they said, what they did." The psychologist explained that an alcohol-induced blackout can damage the brain cells involved in the formation of memory. Thus, even if defendant actually told the assistant State's Attorney all the facts in the statement the assistant State's Attorney wrote, defendant might honestly have had no recollection of the incident at all when he later awoke in his jail cell.

On May 6, 1992, the court sentenced defendant to natural life in prison, with lesser concurrent sentences on the other charges.

In April 2004 defendant filed a motion to have DNA testing of some evidence. On April 13, 2004, the trial court scheduled a hearing on the motion for April 29, 2004. The record shows no notice to defendant of the proceedings held on April 13, 2004, or of the hearing scheduled for April 29, 2004. Neither defendant nor his attorney came to court on April 29, but an assistant State's Attorney appeared in court. The court dismissed the motion on grounds that defendant had not contested the identity of the offender in the original proceedings, because defendant pled guilty. The record shows that the court ordered the clerk

1-04-2154

to notify defendant of the disposition of his motion.  Defendant filed a timely appeal.

ANALYSIS

We review *de novo* the trial court's decision summarily dismissing the motion for DNA testing.  <u>People v. Franks</u>, 323 Ill. App. 3d 660, 662 (2001).  Section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2004)) governs motions for postconviction DNA testing of evidence.  That section provides:

> "(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of *** forensic DNA testing *** on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.
>
> (b) The defendant must present a prima facie case that:
>
> > (1) identity was the issue in the trial which resulted in his or her conviction[.]"
>
> 725 ILCS 5/116-3 (West 2004).

Defendant argues that the court erred by dismissing the motion in an *ex parte* hearing, without providing him notice or

any opportunity to argue in favor of his motion for DNA testing.

"'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" In re Application of the County Collector, 217 Ill. 2d 1, 33 (2005), quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657 (1950).

Illinois courts have applied this general principle to postconviction proceedings. See People v. Bounds, 182 Ill. 2d 1, 5 (1998). Our supreme court has reminded us that "the protection of a defendant's right to procedural due process in post-conviction proceedings is of critical importance." People v. Kitchen, 189 Ill. 2d 424, 435 (2000).

The prosecution contends that section 116-3 permits summary disposition of DNA motions without notice or opportunity to argue because section 116-3 does not include any provisions regarding procedures for deciding such motions. Defendant asks us to treat section 116-3 motions like motions under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2004)). That section, governing postjudgment motions, similarly includes no provisions expressly requiring notice or an opportunity to argue

1-04-2154

prior to disposition.  Some defendants convicted of crimes have brought petitions under section 2-1401 to contest their convictions or sentences.

In People v. Pearson, 216 Ill. 2d 58 (2005), the defendant brought such a petition.  The trial court first decided to construe the petition as one brought under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2000)), rather than section 2-1401.  The trial court then applied the express provisions for summary dismissals under the Post-Conviction Hearing Act and dismissed the petition without notice to defendant.  Our supreme court first acknowledged that the trial court had authority to recharacterize a petition nominally brought under section 2-1401 as a petition under the Post-Conviction Hearing Act.  Pearson, 216 Ill. 2d at 66.  But the court held that before the trial court could so recharacterize a petition, due process required the court (1) to provide notice to the defendant of its intention to treat the petition as one brought under the Post-Conviction Hearing Act, (2) to warn the defendant of the effect of the recharacterization on defendant's rights, and (3) to allow the defendant the opportunity to withdraw or amend the pleading.  Pearson, 216 Ill. 2d at 68.

The careful delineation of the necessary procedures appears superfluous if the trial court had authority to dismiss summarily the 2-1401 petition.  Several panels of the appellate court have concluded that the trial court lacks authority to dismiss

summarily 2-1401 petitions.  E.g., <u>People v. Edwards</u>, 355 Ill.
App. 3d 1091, 1100 (2005) (and cases cited therein).  In <u>Edwards</u>
the court distinguished summary dismissals from *sua sponte*
dismissals, and noted that the court had authority to dismiss
frivolous petitions *sua sponte*.

> "*Sua sponte* action means only that the court initiates
> a motion, which then follows the otherwise applicable
> procedures, including notice of the proposed judicial
> action and the opportunity to argue against such
> action, as required in fairness to the litigants."
> <u>Edwards</u>, 355 Ill. App. 3d at 1100.

The court noted the express provision in the Post-Conviction
Hearing Act for summary dismissals without notice and an
opportunity to respond, and the court emphasized that section 2-
1401 lacked any such provision.

> "The summary procedures under the Act were specifically
> set by the legislature. It is not our role to make
> these procedures available under other circumstances.
> It is up to the legislature to do so if it sees fit."
> <u>Edwards</u>, 355 Ill. App. 3d at 1100.

The Appellate Court for the Fourth District has rejected
<u>Edwards</u> and similar cases, arguing that summary dismissal must be
acceptable for section 2-1401 petitions because courts have found
that procedure acceptable for petitions under the Post-Conviction
Hearing Act.  <u>People v. Bramlett</u>, 347 Ill. App. 3d 468, 472-73

(2004). As the Appellate Court for the Second District cogently answered, "The Bramlett court seems to believe that the trial courts may mix and match elements of the various procedural provisions without the parties knowing in advance what procedure will be used." People v. Keller, 353 Ill. App. 3d 830, 835 (2004).

In People v. Dyches, 355 Ill. App. 3d 225, 229 (2005), a panel of the Appellate Court for the First District held that "summary dismissal, which is a drastic procedure, should not be read into the procedures provided by section 2-1401." However, the court held that harmless error analysis applied, permitting affirmance of the dismissal of a petition that had "patently incurable" defects. Dyches, 355 Ill. App. 3d at 229.

Section 116-3, like section 2-1401, gives a person convicted of a crime a limited right to challenge the conviction, and it also lacks any express procedural provision. Following the reasoning of Edwards and Dyches, we refuse to read special summary dismissal procedures into section 116-3. The trial court must, at a minimum, provide notice to the defendant of its *sua sponte* motion to dismiss, and the court must give the defendant an opportunity to respond.

We recognize that our holding conflicts with the Fourth District's holding in People v. Stevens, 315 Ill. App. 3d 781 (2000). In that case the trial court summarily dismissed the defendant's motion for postconviction DNA testing pursuant to

1-04-2154

section 116-3.  The appellate court held that the absence of any statutory procedural provision in section 116-3 entailed the adoption of summary dismissal procedures.  Stevens, 315 Ill. App. 3d at 784.  In light of general principles regarding the need for notice and an opportunity to respond to potentially dispositive motions, we refuse to read into a silent statute a special summary dismissal procedure the legislature did not expressly adopt.  We find that the court in Stevens failed to heed our supreme court's emphasis on the "critical importance" of protecting a defendant's procedural rights in postconviction proceedings.  See Kitchen, 189 Ill. 2d at 435.

Nonetheless, following Dyches, we further hold that harmless error analysis applies to the summary dismissal of a postconviction petition for DNA testing of evidence.  The trial court dismissed the petition because defendant pled guilty to the charges, and therefore, the court reasoned, he could not meet the statutory requirement of showing that "identity was the issue in the trial." 725 ILCS 5/116-3(b)(1) (West 2004).

A Missouri statute, like section 116-3 in Illinois, permits postconviction DNA testing in certain instances.  Mo. Rev. Stat. §547.035 (Supp. 2001).  The Missouri statue requires the petitioner to show that "[i]dentity was an issue in the trial." Mo. Rev. Stat. §547.035 (Supp. 2001).  The Supreme Court of Missouri construed the statute in Weeks v. State, 140 S.W.3d 39 (Mo. 2004).  In that case the defendant pled guilty to rape and

nine years later he sought DNA testing of the semen recovered from the victim. The trial court summarily dismissed the petition because the defendant pled guilty. The supreme court reversed, holding:

"The statute's requirements are met if the movant demonstrates that up to the time of the plea -- as that is as far in the trial process as the case proceeded -- identity was at issue." Weeks, 140 S.W.3d at 47.

The Missouri court's resolution expressly allows defendants to obtain DNA testing if they entered guilty pleas while protesting innocence. See North Carolina v. Alford, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). Several state legislatures have expressly allowed defendants who pled guilty to obtain postconviction DNA testing of the evidence against them. See Ohio Rev. Code Ann. §2953.82 (LexisNexis 2006); State v. Smith, 34 Kan. App. 2d 368, 371-72, 119 P.3d 679, 683 (2005). We note that all of these statutes, including the Missouri statute, differ significantly from the Illinois statute. Nonetheless, Illinois courts might choose to construe some parts of the statutes similarly.

Here, defendant told the court he had no memory of the offense, and he presented supporting testimony that he was drunk at the time of the offense, and he often did not remember what he did when he was drunk. An expert affirmed that alcoholics can experience such a pattern of memory loss. The prosecution

claimed that Hirai's blood on defendant's clothes helped prove that he murdered her, but the prosecutor did not say what tests substantiated the claim.  If the blood on defendant's clothes did not come from Hirai, one might doubt that defendant committed the murder.

The evidence against defendant appears overwhelming, and it fully justified his decision to plead guilty even assuming he did not remember the crime.  However, an adept attorney might persuasively argue for interpreting section 116-3 to permit DNA testing under the circumstances of this case, despite the guilty plea.  This court and the trial court could both benefit from a fuller development of the arguments concerning interpretation of section 116-3.  Because we cannot conclude that the procedural defects had no prejudicial effect, we reverse and remand for proper notice of the court's *sua sponte* motion to dismiss, and to give defendant an opportunity to respond to the dispositive motion.

Reversed and remanded.

FITZGERALD-SMITH, J., concurs.

TULLY, J., dissents.

Justice TULLY, dissenting,

I dissent from the majority opinion because I believe the dismissal of the petition is inevitable and further proceedings in the circuit court will only delay dismissal.

1-04-2154

I wholly agree with the majority that summary dismissal should not be read into the procedure provided by section 116-3 as it is unfair to a defendant, when faced with the proposed dismissal of his section 116-3 petition, to be deprived of notice and an opportunity to respond. I further agree with the majority that we should apply the harmless error analysis to the circuit court's summary dismissal of defendant's postconviction petition for DNA testing.

I disagree with the majority because in this case I believe the procedural defects had no prejudicial effect. Here, the defendant was required to make a prima facie case that identity was the issue in the trial which resulted in his conviction. The record clearly shows that identity was not an issue because the defendant pled guilty. Moreover, postconviction DNA testing is predicated upon a claim of actual innocence. The defendant has never wavered from his guilty plea and has never claimed he is actually innocent.

In the instant case, identity was never at issue. The defendant here did not deny committing the acts charged, pled guilty and did not have a trial. Thus, the inherent defects in defendant's 116-3 petition are patently incurable. I find that regardless of whether the circuit court erred in failing to provide defendant with notice and an opportunity to be heard, defendant could not have cured the inherent defects in his 116-3 petition because he could not make a prima facie case that

˘13˘

identity was at issue.  The dismissal of the petition is inevitable and further proceedings will only delay that result.

Because I find that any procedural error was harmless, I would affirm the order of the circuit court.