FIRST DIVISION
NOVEMBER 13, 2007

No. 1-05-0515

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | Nos. 82 C 12459, 82 C 12460 |
| | ) | |
| GREGORY MOORE, | ) | Honorable |
| | ) | Paul P. Biebel, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the modified opinion of the court:

Defendant Gregory Moore appealed from an order of the circuit court of Cook County entered on February 24, 2005, denying his *pro se* motion for deoxyribonucleic acid (DNA) testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2004)). On appeal, defendant contended (1) that the trial court erred by denying his motion for DNA testing because the identity-at-issue requirement of section 116-3 was unconstitutional as applied to him, (2) that his guilty plea was involuntary because it was based on an "unfulfilled promise" of leniency, and (3) that the trial court violated defendant's due process rights by ruling on issues beyond the understood scope of the hearing which resulted in the February 24, 2005, dismissal. This court affirmed the denial of his *pro se* motion based on defendant's failure to fulfill the chain of custody requirement of subsection (b)(2) of section 116-3. This court also went on to address defendant's constitutional challenge, and found the identity

at issue requirement of section 116-3, not unconstitutional. *People v. Moore*, 373 Ill. App. 3d 367 (2007).

The Illinois Supreme Court denied defendant's petition for leave to appeal, but ordered this court to vacate that part of the judgment addressing the constitutionality of subsection (b)(1) of section 116-3, in light of the Supreme Court's pronouncements in *In re E.H.*, 224 Ill. 2d 172 (2006), and *Mulay v. Mulay*, 225 Ill. 2d 601 (2007), that appeals must be determined on statutory, nonconstitutional grounds whenever possible. *People v. Moore*, ___ Ill. 2d ___ , 873 N.E.2d 941 (2007). We hereby vacate that portion of this court's original opinion.

BACKGROUND

According to the memorandum opinion and order of the trial court, the background to this case is as follows: At some time between midnight and 1 a.m., on October 27, 1982, T.R. was returning to her apartment in the Lakeview neighborhood of Chicago. The defendant grabbed her, put a gun to her head, and forced her into her apartment. While there, defendant repeatedly raped T.R. and then compelled her to perform oral sex while defendant held a handgun directed at her head.

On November 23, 1982, defendant entered the apartment of L.M. in the Lincoln Park neighborhood of Chicago around 6:55 p.m. The defendant pointed a gun at her head, demanded money and jewelry. After L.M. gave him the items he demanded, defendant bound, gagged, and raped her.

On December 10, 1982, at around 8 p.m., K.D. was returning to her apartment located in the Wrigleyville neighborhood in Chicago. The defendant exited a vehicle driven by Virgie

2

Peterson and approached K.D. Defendant held a silver handgun to K.D.'s head and demanded her money. He took approximately $60 and was driven away by Peterson in the same vehicle. Only four hours later, defendant and Peterson robbed R.K. in the Lincoln Park neighborhood in Chicago with the aid of the same silver handgun. R.K. was walking in a gangway of her building when defendant approached her from behind, put his arm around her shoulders, led her to a lower-level apartment and pushed her against a wall. Defendant put the silver gun to her head, told her to stay quiet and demanded her money and wedding ring. When R.K. refused to surrender her wedding ring, a struggle ensued during which defendant tried to remove the ring. R.K. screamed and defendant threatened to shoot her. He took her purse and fled.

Defendant was subsequently arrested with Peterson on the south side of Chicago and charged with these crimes. He admitted his guilt to police officers after being found in possession of R.K.'s purse. Defendant was convicted by a jury for the armed robbery of R.K. and sentenced to the Illinois Department of Corrections for 30 years on February 27, 1984. He did not testify at the trial but admitted his guilt at sentencing.

Defendant pleaded guilty to the armed robbery of K.D., the armed robbery and rape of L.M., and the rape of T.R. Pursuant to defendant's guilty plea on these charges and defendant's previous conviction for the armed robbery of R.K., defendant was sentenced to 20 years for the armed robbery and rape of L.M. concurrent with 20 years for the rape of T.R. and 20 years for the armed robbery of K.D. in the Illinois Department of Corrections on July 24, 1984, to run consecutively with 30 years previously given for a total of 50 years in the Illinois Department of Corrections.

3

On December 23, 2002, the defendant filed a *pro se* request for DNA testing on the rape cases pursuant to section 116-3 (725 ILCS 5/116-3 (West 2004)). The trial court appointed the Cook County public defender to represent the indigent defendant on October 2, 2003, 18 years after his conviction. That same day, defendant filed an amended motion requesting DNA testing and challenged the voluntariness of his guilty plea, arguing that it was "based upon an unfulfilled promise of leniency, and exoneration of the rape charges on a later date."

The trial court heard oral argument from both defense counsel and the State relating to the motion for DNA testing on December 22, 2004. On February 24, 2005, the trial court denied defendant's motion and issued a 12-page memorandum opinion and order setting forth the reasons for the denial. This appeal followed.

ANALYSIS

On appeal, defendant first contends that the trial court erred by denying his motion for DNA testing because the identity-at-issue requirement of section 116-3 is unconstitutional as applied to him. Specifically, defendant argues that subsection (b)(1) of section 116-3 is unconstitutional because it bars defendant and all those similarly situated who pleaded guilty to crimes before the development of DNA technology from filing motions for DNA testing.

A trial court's ruling on a motion brought pursuant to section 116-3 of the Code of Criminal Procedure is reviewed *de novo*. *People v. Hockenberry*, 316 Ill. App. 3d 752, 755 (2000). Review in such cases is *de novo* because the trial court's decision regarding a section 116-3 motion is not based upon its assessment of the credibility of the witnesses but on its review of the pleadings and the trial transcripts. *Hockenberry*, 316 Ill. App. 3d at 755.

4

"Section 116-3 of the Code of Criminal Procedure of 1963 [citation] became effective January 1, 1998. Its purpose is to provide an avenue for convicted defendants who maintained their innocence to test *** genetic material capable of providing new and dramatic evidence materially relevant to the question of the defendant's actual innocence." *People v. Henderson*, 343 Ill. App. 3d 1108, 1114 (2003). Section 116-3 provides:

"§ 116-3. Motion for fingerprint or forensic testing not available at trial regarding actual innocence.

(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections [730 ILCS 5/5-4-3], on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence even though the results may not completely exonerate the defendant;

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116-3 (West 2004).

Defendant urges us on appeal, as he urged the trial court, to find the identity-at-issue requirement recited in subsection (b)(1) of section 116-3 unconstitutional. However, it is well established that cases should never be decided on constitutional grounds if alternate means exist, reaching constitutional issues only as a last resort. *People v. Lee*, 214 Ill. 2d 476, 482 (2005) ("courts should not compromise the stability of the legal system by declaring legislation unconstitutional when a particular case does not require it").

As the trial court correctly noted, this case can be decided without reaching the constitutional issue. The trial court correctly held that defendant was not entitled to DNA testing

because he failed to meet the requirement of subsection (b)(2) of section 116-3. Subsection (b)(2) requires the defendant to establish a sufficient chain of custody to offer proof that DNA was collected from the crime scene, has not been altered, and is in the possession of the proper authorities. *People v. Johnson*, 205 Ill. 2d 381, 394 (2002). In examining the chain of custody requirement, courts look to proof of delivery of the evidence, presence and safekeeping. *People v. Gibson*, 287 Ill. App. 3d 878, 882 (1997).

Defendant failed to meet the chain of custody requirement. He alleges in his section 116-3 motion that "to the best of [his] belief, the material collected is in the possession of the proper authorities and has not been tampered with, replaced, or altered in any material respect." As the trial judge correctly noted, these conclusory statements fail to satisfy the chain of custody prerequisite and essentially mirror the allegations made by the defendant in *People v. Jones*, 334 Ill. App. 3d 61, 64-66 (2002). Here, as in *Jones*, defendant has made absolutely no showing as to where the items are now, more than 20 years after his arrest, nor done anything to establish a chain of custody from the Chicago police department. Defendant does not allege with any specificity if the proper authorities took DNA when the DNA was received or mention anything pertaining to the current condition of the DNA. Therefore, the trial court properly denied defendant's section 116-3 motion for DNA testing because the defendant failed to meet the requirements of subsection (b)(2) of the statute.

Defendant then argues that his guilty plea was involuntary because it was based on an "unfulfilled promise" of leniency. Defendant suggests he was promised that he would receive three 20-year prison terms to run concurrently with the 30-year prison term he received for the

armed robbery of R.K. in exchange for his guilty plea to the rapes. Allegedly, defendant later learned counsel had misinformed him and he was sentenced to a consecutive term of imprisonment causing defendant to receive a total prison term of 50 years. We are not persuaded by defendant's argument.

As the trial court noted, the defendant failed to object to the plea agreement in open court when the sentencing judge sentenced him to three 20-year concurrent prison terms to run consecutively with the 30-year prison term he received for the armed robbery of R.K. causing defendant to serve a total prison term of 50 years although he was expecting a total term of 30 years according to the alleged promise of leniency. The defendant also waited more than 20 years to challenge the voluntariness of his plea. We therefore find that the defendant's guilty plea was knowingly and voluntarily made and defendant's challenge to the plea disingenuous.

Defendant's final argument is that the trial court violated defendant's due process rights by ruling on issues beyond the understood scope of the hearing, which resulted in the February 24, 2005, dismissal. Defendant claims that the oral arguments held on December 22, 2004, were held solely to determine the constitutionality of subsection (b)(1) of section 116-3. Specifically, defendant claims that it was error for the trial court to reach the issue regarding the sufficiency of defendant's section 116-3 motion for DNA testing because defendant was not prepared to address that issue at oral argument.

The record does not indicate that the December 22, 2004, oral argument was set only for arguments regarding the constitutionality of subsection (b)(1) of section 116-3. If there is

evidence indicating that the hearing was restricted to that legal issue, defendant has failed to provide it in the record of this case.

"The appellant has the burden of providing a sufficiently complete record on appeal so that the reviewing court is fully informed regarding the issues to be resolved; in the absence of a complete record on appeal, it is presumed that the trial court's judgment conforms to the law and has a sufficient factual basis." *People v. Odumuyiwa*, 188 Ill. App. 3d 40, 45-46 (1989). The only evidence of the restriction on the hearing was defense counsel's assertion, contained in the trial transcript, that the hearing was restricted to the issue of the constitutionality of subsection (b)(1) of section 116-3. However, also in the trial transcript is defense counsel's argument regarding the issue of actual innocence and the availability of DNA technology at the time of defendant's guilty plea. Moreover, defense counsel had more than a year to conduct discovery and seek out DNA, if it existed in this case. As noted, the public defender was appointed to defendant's case on October 2, 2003, and oral argument on defendant's section 116-3 motion was held on December 22, 2004. It does not conclusively appear from the transcript that the hearing on December 22, 2004, was restricted solely to the constitutional question, nor does it appear that defendant did not have ample opportunity to seek discovery to satisfy the chain of custody element of section 116-3. Accordingly, we find defendant's argument unpersuasive.

Defendant has made no argument in his brief that the trial court erred when it ruled that defendant's section 116-3 motion was insufficient because defendant failed to allege any new evidence demonstrating defendant's actual innocence. As a consequence, the issue of whether the

trial court erred in ruling that the defendant's motion was insufficient is waived.  210 Ill. 2d R. 341(h)(7).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County. This court finds that defendant's motion for DNA testing was properly denied by the trial court because defendant failed to satisfy the chain of custody requirement of section 116-3.  We find that defendant's guilty plea was not involuntary.  We also find that the trial court did not err in addressing the sufficiency of the defendant's motion because nothing in the record indicates that the scope of the hearing was restricted to argument regarding the constitutionality of subsection (b)(1) of section 116-3.

Affirmed.

CAHILL, P.J., and GARCIA, J., concur.