2021 IL App (1st) 201065-U
Order filed: July 30, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-20-1065

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 03 CR 25634 (02) |
| CARNELL JACKSON, | ) ) | Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Second-stage dismissal of postconviction petition is affirmed, where defendant failed to make a substantial showing that he was provided ineffective assistance of trial counsel.

¶ 2    Defendant-appellant, Carnell Jackson, appeals from the second-stage dismissal of his amended postconviction petition. For the following reasons, we affirm.

¶ 3    Before proceeding further, we note that relevant portions of this order have been taken from the two prior decisions issued by this court with respect to defendant's conviction and postconviction proceedings. See *People v. Jackson*, 2014 IL App (1st) 122005 (unpublished order under Supreme Court Rule 23); *People v. Jackson*, 2018 IL App (1st) 160508 (unpublished order under Supreme Court Rule 23). We also note that while the record on appeal is complete with

respect to the instant postconviction proceedings, it does not contain the full record of defendant's jury trial, specifically lacking all of the trial testimony or all the trial exhibits, including the videotaped confession made by defendant that was introduced at trial. As the appellant, it was defendant's burden to provide a sufficiently complete record on appeal so that this court can be fully informed about the issues. *People v. Moore*, 377 Ill. App. 3d 294, 300 (2007). Absent a complete record, we must presume the trial court's judgment conforms to the law and has a sufficient factual basis. *Id.* Any doubts arising from the incomplete record will be resolved against defendant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 4 Nevertheless, if the record is sufficient to disclose any errors of which the appellant complains, and the issues can be resolved on the record as it stands, the propriety of the circuit court's order can be considered on appeal. *Id.*; *Morales v. Mongolis*, 293 Ill. App. 3d 660, 663 (1997). Here, we find that the record before us is sufficient to address defendant's contentions of error.

¶ 5 Defendant was charged by indictment with—*inter alia*—multiple counts of first degree murder, all of which generally alleged that defendant shot and killed Antonio Stroud on or about October 8, 2003. Prior to trial, defendant's trial counsel filed a motion to suppress all of defendant's statements to the police, including his videotaped confession to the murder. The motion to suppress was ultimately denied, and this matter proceeded to a jury trial in July of 2005.

¶ 6 The evidence at trial included testimony regarding defendant's oral statement to police and videotaped statement to an assistant state's attorney implicating himself in the murder of the victim, an action taken in retaliation for the victim's involvement in a prior robbery of the victim's cousin, Angelo Stroud. The State also presented evidence that three eyewitnesses identified defendant as the shooter, and that a gun and ammunition matching the description and caliber of

the murder weapon were recovered from defendant's automobile after defendant told the police where it could be found.

¶ 7     In contrast, at trial defendant was the sole defense witness and admitted that he initially participated in an attempt to confront those responsible for the prior robbery, specifically the victim. However, he then changed his mind and sought to retrieve his gun from Angelo before Angelo used that gun to shoot the victim. At the conclusion of the trial, defendant was found guilty of first-degree murder, with the jury specifically finding that he personally discharged a firearm causing death.

¶ 8     Defendant's trial counsel filed a posttrial motion which argued—*inter alia*—that the circuit court erred in denying the motion to suppress. Defendant himself then filed a *pro se* posttrial motion that asserted his trial counsel—LaFerrall Moffett—was ineffective for failing to interview and/or present certain witnesses at trial, including Zipporah Provitt. Thereafter, defendant obtained new counsel. Defendant's posttrial counsel filed an amended posttrial motion that also asserted—*inter alia*—that Moffett was ineffective for failing to interview and present certain witnesses at trial. After a hearing at which Moffett, Provitt and defendant testified, defendant was denied any posttrial relief and he was then sentenced to a term of 45 years' imprisonment, which included a mandatory enhancement for defendant's personal discharge of a firearm.

¶ 9     A timely direct appeal was filed by defendant's posttrial counsel. However, on April 28, 2011, defendant's appeal was dismissed for want of prosecution after no timely appellant's brief was filed. While defendant's posttrial defense counsel attempted to have this order vacated, and in doing so admitted that the failure to file a timely appellant's brief was due solely to his own inadvertence, that effort was rejected by this court on May 25, 2011. Defendant thereafter filed a

*pro se* "notice of appeal" from the dismissal of his appeal in the circuit court, but that effort was rejected by an order of the circuit court entered on November 23, 2011.

¶ 10     On April 4, 2012, defendant filed a previous postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (720 ILCS 5/122-1 *et seq.* (West 2014)). Therein, defendant contended—*inter alia*—that he was denied effective assistance of appellate counsel because his direct appeal had been dismissed due solely to the neglect of defendant's posttrial counsel. Counsel was appointed to represent defendant in the postconviction proceedings, and the State conceded this issue. Therefore, on June 27, 2012, the circuit court entered an order—by agreement—granting defendant leave to file a late notice of appeal, pursuant to *People v. Ross*, 229 Ill. 2d 255, 262-71 (2008) (recognizing that the circuit court has authority to grant late notices of appeal in postconviction proceedings involving claims that a direct appeal was unperfected due to ineffectiveness of appellate counsel, and noting that "an appeal is perfected by filing a notice of appeal, and later filing a docketing statement, the record, and an appellant's brief.").[1] That late notice of appeal was filed the same day.

¶ 11     On direct appeal, defendant contended solely that Moffett provided ineffective assistance of counsel by failing to support the motion to suppress his videotaped confession with a citation to section 103-2.1 of the Code of Civil Procedure (Code) (725 ILCS 5/103-2.1 (West 2004)), a statute that defendant contended would have made that confession presumptively inadmissible due to the failure to electronically record the pre-confession interrogations. He further contended that the attorney representing him in the posttrial proceedings provided ineffective assistance when, in

---

[1]See also, *People v. Moore*, 133 Ill. 2d 331, 337 (1990) (noting that "either a motion to reinstate an appeal, addressed to the appellate court, or a post-conviction attack, addressed in the first instance to the trial court, can be utilized to obtain relief where a direct appeal has been dismissed due to the neglect of defendant's attorney.").

challenging Moffett's competence, he did not note this failure on the part of trial counsel. Defendant, therefore, asked this court to reverse his conviction and remand for a new trial. In an order entered on December 5, 2014, we rejected defendant's arguments and affirmed his conviction and sentence. *People v. Jackson*, 2014 IL App (1st) 122005 (unpublished order under Supreme Court Rule 23).

¶ 12     On November 13, 2015, defendant filed a *pro se* postconviction petition, in which he raised a host of arguments. Of relevance to this appeal, defendant's petition asserted that Moffett provided ineffective assistance by failing to: (1) interview and/or present certain witnesses at trial, including Tyshawn Wallace, Provitt and Gregory Howard: and (2) request jury instructions on the issues of accountability and withdrawal. He also contended that he was denied effective assistance of appellate counsel because these issues were not raised on direct appeal. Attached as an exhibit in support of the petition was—*inter alia*—a written report prepared by an independent investigator. That report memorialized an August 20, 2015, interview with Tyshawn, in which he "noted many times ***that Carnell Jackson did not shoot Antonio Stroud ***. Tyshawn was never interviewed by Carnell Jackson's defense lawyer nor asked to testify in court." Also attached to the petition was defendant's own affidavit, in which he averred that the petition's contents were true and correct and also averred that "other substantial affidavits are not obtainable at the present time" due to the fact that he was an "indigent person, incarcerated and is unable to hire an attorney or investigator to represent this cause."

¶ 13     On December 7, 2015, the circuit court summarily dismissed the petition at the first stage after finding it to be "without merit."

¶ 14     Defendant appealed from the first-stage dismissal of his postconviction petition raising several issues, and we reversed and remanded for further proceedings based on defendant's

argument that Moffett was ineffective for failing to investigate or present Wallace's testimony at trial. *People v. Jackson*, 2018 IL App (1st) 160508-U, ¶ 16. After noting that we were not to consider arguments regarding trial strategy or make findings of fact or credibility determinations at the first stage, we concluded that "defendant raised an arguable claim that Mr. Moffett was ineffective for failing to investigate Tyshawn and present his testimony at trial." *Id.* ¶¶ 23-24. We specifically noted, however, that "our finding in no way expresses an opinion on the ultimate merits of the assertions contained in defendant's postconviction petition, or on whether defendant will ultimately prevail on his postconviction claims." *Id.* ¶ 27.

¶ 15     On remand, defendant's counsel filed an amended petition that once again alleged that Moffett provided ineffective assistance by failing to: (1) interview and/or present at trial the testimony of Wallace, Provitt and Howard; and (2) request jury instructions on the issues of accountability and withdrawal. The State filed a motion to dismiss and defendant a response thereto. Following a hearing, the circuit court granted the State's motion on September 2, 2020. Defendant timely appealed.

¶ 16     The Act "provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial or sentencing." *People v. Dupree*, 2018 IL 122307, ¶ 28. The petition may be dismissed at the first stage if it is frivolous or patently without merit, otherwise it advances to the second stage. 725 ILCS 5/122-5 (West 2018). At the second stage, the defendant must make a substantial showing of a deprivation of constitutional rights or the petition is dismissed. *Dupree*, 2018 IL 122307, ¶ 28. If such a showing is made, the postconviction petition advances to the third stage where the court conducts an evidentiary hearing. 725 ILCS 5/122–6 (West 2018).

¶ 17     Here, defendant's amended petition was dismissed at the second stage. "At the second stage

of postconviction proceedings, the State may file a motion to dismiss the petition and the postconviction court must determine whether the petition and any accompanying documents make a substantial showing of a constitutional violation." *People v. Graham*, 2012 IL App (1st) 102351, ¶ 31. At this stage, "[t]he postconviction court takes 'all well-pleaded facts that are not positively rebutted by the trial record' as true." *Id*. (quoting *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). The dismissal of a postconviction petition at the second stage is reviewed *de novo* (*id*.), and we may affirm such a second-stage dismissal "on any basis supported by the record" (*People v. Stoecker*, 384 Ill. App. 3d 289, 292 (2008)).

¶ 18    All the claims raised in defendant's petition involve allegations that he received ineffective assistance of trial counsel. A claim of ineffective assistance of counsel is judged according to the two-prong test established in *Strickland v. Washington,* 466 U.S. 668 (1984). See *People v. Lawton,* 212 Ill. 2d 285, 302 (2004). In order to obtain relief under *Strickland,* a defendant must prove defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused defendant prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different. *People v. Wheeler,* 401 Ill. App. 3d 304, 313 (2010). Because defendant must make a substantial showing of a constitutional violation in order to avoid dismissal at the second stage, it is appropriate at this stage to require defendant "to 'demonstrate' or 'prove' ineffective assistance by 'showing' that counsel's performance was deficient and that it prejudiced the defense." *People v. Tate*, 2012 IL 112214, ¶ 19.

¶ 19    Effective assistance of counsel refers to competent, not perfect, representation. *People v. Palmer*, 162 Ill. 2d 465, 476 (1994). Thus, a petitioner must overcome the presumption that the challenged conduct might be considered sound trial strategy under the circumstances. *People v.*

*Mims*, 403 Ill. App. 3d 884, 890 (2010). "Decisions involving what evidence to present and which witnesses to call fall within the broad category of trial strategy and are not subject to a claim of ineffective assistance unless they deprive a defendant of a meaningful adversary proceeding." *People v. Smith*, 2012 IL App (1st) 102354, ¶ 86 (citing *People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005)).

¶ 20    Furthermore, it is well settled "that a reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007). A mistake in trial strategy or an error in judgment will not render representation constitutionally defective. *Id.* at 355-356. "Only if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel be found." *Id.*

¶ 21    We begin by addressing defendant's contentions regarding the failure to interview and/or present the testimony of Wallace, Provitt and Howard at trial. At the posttrial hearing, Moffett explained that he determined not to further investigate Wallace as a potential witness—even though at one point Wallace identified the victim's cousin Angelo as the shooter—after noting that Wallace was defendant's stepson and had provided at least three different versions of the events leading up to, during and following the shooting to the police and the grand jury, including various statements about his ability to identity the shooter. Moffett believed Wallace would therefore be subject to significant impeachment. The record on appeal bears out Moffett's assertion that Wallace's version of events has indeed changed repeatedly over time.

¶ 22    As to Provitt, Moffett explained that she was defendant's stepdaughter and had similarly provided different versions of events, first telling the police that she could not identify the shooter

before later asserting that the shooter was Angelo. The record on appeal confirms these discrepancies in Provitt's version of events. Moffett also contended that during a meeting following a pretrial hearing in this matter, Provitt offered to provide perjured testimony when she asked Moffett "what do you want us to say."

¶ 23    With respect to Howard, another potential witness to the shooting, Moffett testified that he ran his "rap sheet" in an effort to locate him and sent his investigator to what he believed to be Howard's address on "numerous occasions." A person believed to be Howard's grandmother was contacted by the investigator, but Howard "never made himself available for an interview." While defendant complains that Moffett should have done more to locate Howard and present his testimony at trial, his postconviction counsel admitted below that they too "were not able to locate him and produce an affidavit or confirm his willingness to testify in this case." Of note, "when a defendant raises a claim of ineffective assistance of counsel in a postconviction petition based on counsel's failure to investigate or call a witness to testify, the petition may properly be dismissed at the second stage—whether an affidavit is attached or not—if the evidence presented in support of the claim does not make a substantial showing that counsel was ineffective." *People v. Dupree*, 2018 IL 122307, ¶ 40.

¶ 24    On this record, we generally find unconvincing defendant's assertion that he met his second-stage burden to make a substantial showing that Moffett's performance or trial strategy in this regard was so unsound that it fell below an objective standard of reasonableness. We need not resolve defendant's contentions regarding the failure to interview and/or present the testimony of Wallace, Provitt and Howard on this basis, however, because while defendant must establish both prongs of the two-part test discussed above, a reviewing court need not address counsel's alleged deficiencies if the defendant fails to establish any prejudice. See *Strickland,* 466 U.S. at 687;

*People v. Edwards,* 195 Ill. 2d 142, 163 (2001).

¶ 25    Indeed, our supreme court has held that "*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice." *People v. Bew,* 228 Ill. 2d 122, 135 (2008). A defendant has the burden of establishing any such prejudice. *People v. Glenn,* 363 Ill. App. 3d 170, 173 (2006). Thus, at the second stage of these postconviction proceedings, defendant had the burden of making a substantial showing that a reasonable probability exists that the outcome of trial would have been different had his trial counsel's performance been different. *People v. Harris,* 206 Ill. 2d 293, 307 (2002). A " 'reasonable probability' " is " 'a probability sufficient to undermine confidence in the outcome' " of the proceeding. *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694).

¶ 26    It is well recognized that "that 'a confession is the most powerful piece of evidence the State can offer, and its effect on a jury is incalculable.' " *Id.* ¶ 36 (quoting *People v. R.C.,* 108 Ill. 2d 349, 356 (1985)); *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (a confession may be the " 'most probative and damaging evidence that can be admitted' " against a defendant (quoting *Bruton v. United States*, 391 U.S. 123, 139 (1968) (White, J., dissenting))). Here, the jury was presented with testimony regarding defendant's oral confession to police and as well as his videotaped statement to an assistant state's attorney in which he implicated himself in the murder of the victim. Furthermore, it is axiomatic that the testimony of a single eyewitness, if positive and credible, is sufficient to sustain a conviction. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Here, the State presented evidence that *three* witnesses positively and consistently identified defendant as the shooter in both a line up and in open court. In addition, the vehicle in which the victim was sitting at the time of the shooting suffered bullet damage to the left rear, where defendant—and not Angelo—was located by the witnesses. Finally, a gun and ammunition

matching the description and caliber of the murder weapon was recovered from defendant's automobile, exactly where he informed the police it would be found.

¶ 27    Against this overwhelming evidence of defendant's guilt, defendant contends that he was prejudiced by Moffett's failure to present the testimony of two witnesses—Wallace and Provitt—relatives of defendant who provided alternating versions of events, and were thus subject to serious impeachment, and a third witness—Howard—that no one could locate and whose willingness to testify and the content of any such testimony were unknown. We fail to see how defendant established a substantial showing of *actual prejudice* on this record, and therefore conclude that defendant failed to meet his burden of making a substantial showing that a reasonable probability exists that the outcome of trial would have been different had Moffett's performance regarding Wallace, Provitt and Howard been different.

¶ 28    In so ruling, we necessarily reject several challenges defendant raises with respect to the strength of the State's evidence at trial. Defendant notes that one of the witnesses had been drinking and had participated in the prior robbery which provided the impetus for the shooting, thus providing him a motive to lie. However, this argument does not account for the consistent testimony of the other two eyewitnesses that were not involved in the robbery. Defendant also notes that one of the eyewitnesses said she saw defendant place a cup on the top of the hood of a car parked nearby before the shooting, while another testified the cup was placed on the top of the trunk of the car. However, minor inconsistencies between the descriptions of eyewitnesses do not render their identifications of a defendant unreliable. *People v. Brown*, 2020 IL App (1st) 170980, ¶ 51. Defendant also misreads the record in claiming that two eyewitnesses testified that they heard 6 to 10 shots and 4 to 5 shots, respectively, while the third eyewitness only heard a single shot. The third eyewitness actually testified he heard a single shot before he then heard "a few more

shots."

¶ 29    Lastly, we reject defendant's contention that the eyewitness testimony that defendant shot at the victim from the left rear of the vehicle in which the victim was seated was contradicted by the forensic evidence showing that the fatal gunshot traveled from the front right of the victim's head to the left rear. First, as noted above, all the gunshot damage to the vehicle was to the rear. In addition, each of the eyewitnesses were also in the vehicle at the time of the shooting, and each testified that they turned to look toward defendant before he started to shoot. The victim's fatal bullet wound is thus fully consistent with that testimony if he too turned toward defendant prior to the fatal shot being fired. We certainly find nothing about this forensic evidence that undermines our confidence in the outcome of the proceedings. *Simpson*, 2015 IL 116512, ¶ 35.

¶ 30    We next turn to defendant's remaining contention that Moffett provided ineffective assistance by failing to request jury instructions on the issues of accountability and withdrawal. Citing to defendant's testimony that he changed his mind about confronting the victim and tried to get his gun back prior to Angelo's purported shooting of the victim, defendant contends that he was prejudiced by the failure to have the jury so instructed because: (1) the jury could have found him not guilty on the basis that he withdrew, or (2) at the very least, the jury could have found him guilty only on a theory of accountability, thus reducing the mandatory sentencing enhancement to which he would be subjected for his personal discharge of a firearm. We disagree.

¶ 31    Moffett explained in his testimony at the posttrial hearing that the defense theory was that Angelo, and not defendant, shot the victim and that defendant had no idea that Angelo intended to kill the victim. That was the reason he did not offer an accountability instruction.

¶ 32    "It is well established in Illinois that a counsel's choice of jury instructions, and the decision to rely on one theory of defense to the exclusion of another, is a matter of trial strategy. [Citations.]

Our supreme court has stated: 'Such decisions enjoy a strong presumption that they reflect sound trial strategy, rather than incompetence,' and therefore are 'generally immune from claims of ineffective assistance of counsel.' [Citation.]" *People v. Minniefield*, 2014 IL App (1st) 130535, ¶ 76. Furthermore, a trial counsel's " 'decision to advance an "all-or-nothing defense" has been recognized as a valid trial strategy [citations] and is generally not unreasonable unless that strategy is based upon counsel's misapprehension of the law.' " *People v. Spiller*, 2016 IL App (1st) 133389, ¶ 39 (quoting of *People v. Walton*, 378 Ill. App. 3d 580, 589 (2007)).

¶ 33 On this record, we conclude that defendant has failed to show that Moffett's "all-or-nothing" defense was not a sound trial strategy, and that he should rather have offered jury instructions on the issues of accountability and withdrawal that arguably would have made it easier for the jury to find defendant guilty. Indeed, although this strategy did not result in a favorable verdict, we must make every effort to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. We may not conclude that a particular strategy or tactic was unreasonable simply because it has proved unsuccessful. *Id*. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

¶ 34 Moreover, even if we thought otherwise regarding Moffett's performance defendant has not met his burden to make a substantial showing of actual prejudice. As explained above, the evidence that defendant was the shooter was overwhelming. We therefore conclude that defendant has not shown that, even if jury instructions on the issues of accountability and withdrawal were offered and given, a reasonable probability exists that the outcome of trial would have been different.

¶ 35 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 36    Affirmed.