2020 IL App (1st) 170254-U
Order filed August 21, 2020
Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 6649 |
| | ) | |
| CHARLIS HARRIS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's denial of defendant's *pro se* postconviction motion for forensic testing where she failed to make a *prima facie* case that she was entitled to forensic testing.

¶ 2    Defendant Charlis Harris appeals from the trial court's order denying her *pro se* postconviction motion for forensic testing pursuant to section 116-3 of the Code of Criminal Procedure (725 ILCS 5/116-3 (West 2016)). On appeal, she contends the court erroneously denied her motion because she established a *prima facie* case for forensic testing which has the potential

of producing new, noncumulative evidence materially relevant to her affirmative defense of self-defense and, "thus, a claim of actual innocence." For the following reasons, we affirm.[1]

¶ 3    Following a 2011 bench trial, defendant was convicted of heinous battery, aggravated discharge of a firearm, and aggravated unlawful use of a firearm (AUUW). She was sentenced to 13 years for heinous battery, 5 years for aggravated discharge of a firearm, and 2 years for AUUW. Her sentences for aggravated discharge of a firearm and AUUW were to be served concurrently to each other and consecutively to the sentence for heinous battery. We affirmed on direct appeal but vacated her conviction for AUUW. *People v. Harris*, 2014 IL App (1st) 120643-U. We set forth the facts in defendant's direct appeal and recite them here to the extent necessary to our disposition.

¶ 4    The trial court heard two accounts of an incident that took place on March 24, 2010. The State's evidence established that defendant and the victim Serretta Rogers both had relationships with Jason Smith. Based on these relationships, defendant and Rogers did not get along, which culminated in a physical altercation on March 13, 2010. On March 24, 2010, defendant, still angry about the prior altercation, confronted Rogers at a restaurant. Rogers, who was with her daughter Keonna King, drove away and defendant followed them home, repeatedly ramming the rear of Rogers's vehicle on the way. Defendant nearly pinned Rogers inside of her vehicle once they arrived at Rogers's residence. Defendant doused Rogers's face, ear, and hair with sulfuric acid drain cleaner, doused her again with drain cleaner as she ran away, shot a bullet in her direction as she attempted to enter her home, threw acid on Rogers's car, and struck the car with a hammer.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 5    Rogers spent three weeks in the hospital and suffered burns and scarring to her face, hair, and lower back, and required at least three surgical skin grafts and additional minor surgeries on her face. Rogers denied having a hammer that day. The police recovered a hammer from the parkway in front of Rogers's residence and a second hammer from defendant's purse. The police also recovered a handgun from defendant's purse. The windshield and driver's side window on Rogers's vehicle were damaged. The windshield on defendant's vehicle was also broken.

¶ 6    Defendant presented evidence that Rogers and King attacked defendant on March 13, 2010, after which defendant was treated for a two-centimeter wound to her forehead. On March 24, 2010, Rogers initiated the altercation by taunting and spraying mace on defendant and her young daughter Tammesha Watkins as they sat in their car at the restaurant. Defendant, with Watkins in her car, followed Rogers home so she could get her license plate number and call the police. Rogers repeatedly slammed on her brakes, causing defendant's car to hit Rogers's car. Once at Rogers's residence, Rogers and her family confronted defendant and Watkins with a hammer, knife, bat, and golf club. Rogers hit defendant's windshield with a hammer and attempted to strike Watkins with the hammer. In self-defense, defendant threw a bottle of drain cleaner at Rogers. Rogers ran into her residence and dropped her hammer in the parkway. Rogers' family members were still outside so defendant fired a bullet into the air in an attempt to ward them off. She then took a hammer from her glove compartment and struck Rogers's car with it to keep the family members away from her. She then left the scene.

¶ 7    In rebuttal, the State introduced a stipulation regarding testimony from Chicago police detective Constance Besteda, who would testify that defendant gave two statements about the incident on March 24 and 25, 2010. In her first statement, defendant stated Smith was cheating on

her with Rogers and the March 24, 2010, incident began in front of Rogers's house. Rogers first threw a substance through defendant's window and struck defendant's windshield with a golf club. Rogers did not run until defendant fired a bullet into the air. Defendant then struck Rogers's car windows.

¶ 8    Besteda would further testify that, in the second statement, defendant acknowledged that the March 24, 2010, incident originated in front of the restaurant when Rogers taunted her about Smith and the previous March 13, 2010, altercation. Defendant further acknowledged bumping into Rogers's vehicle. At Rogers's residence, Rogers threatened Watkins with a hammer, and defendant threw a substance at Rogers, which hit her face. Defendant struck Rogers's car with a hammer and fired a shot into the air because Rogers's family members began to approach her.

¶ 9    The trial court did not find defendant's self-defense testimony credible. It found defendant guilty of heinous battery, aggravated discharge of a firearm, and AUUW. The court denied defendant's motion for new trial, finding her self-defense claim "laughable." It subsequently sentenced defendant to 13 years for heinous battery, 5 years for aggravated discharge of a firearm, and 2 years for AUUW. The 5- and 2-year sentences were to be served concurrently to each other and consecutively to the 13-year sentence. We affirmed on direct appeal but, based on the one-act, one-crime doctrine, vacated defendant's conviction and sentence for AUUW. *People v. Harris*, 2014 IL App (1st) 120643-U.

¶ 10    Defendant subsequently filed both a (1) petition for postconviction relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)), raising multiple claims of ineffective assistance of counsel; and (2) motion for a corrected mittimus and sentence. In pertinent part, defendant argued in her postconviction petition that trial counsel was ineffective for failing

to investigate or present at trial fingerprint DNA evidence from a hammer that was found on Rogers' lawn. She argued that there was a reasonable basis to believe that DNA testing would have tied the hammer to Rogers, thereby supporting defendant's trial testimony that Rogers threatened her daughter with a hammer. The trial court summarily dismissed the postconviction petition and denied the motion for a corrected mittimus and sentence. It included a footnote in its order stating defendant could bring a section 116-3 motion for forensic testing of the hammer if she "truly believes that the victim's DNA is present." Defendant appealed both orders, and her appeals were consolidated.

¶ 11    On May 18, 2018, this court affirmed the trial court's denial of defendant's motion for a corrected mittimus but reversed the first-stage dismissal of her postconviction petition, finding that her claims of ineffective assistance of counsel, taken together, satisfied the low threshold standard for first-stage proceedings. *People v. Harris*, 2018 IL (1st) 152241-U, ¶ 28. We remanded for second-stage postconviction proceedings. *Id.*, ¶ 39.[2]

¶ 12    While defendant's consolidated postconviction appeal was pending, on March 9, 2016, she filed the instant *pro se* motion for forensic testing pursuant to section 116-3. She requested that the hammer recovered from the parkway be tested for Rogers' DNA, fingerprints, spatters of drain cleaner, "and/or any other possible DNA that could be obtained." Defendant argued that at trial, she raised an affirmative defense of self-defense based on Rogers threatening her and her daughter with a hammer. However, Rogers had denied possessing a hammer. Thus, defendant argued, if Rogers' DNA was found on the hammer, and had that evidence been presented at trial, it would

---

[2] In its opening brief, the Office of the State Appellate Defender, which represents defendant on appeal, states that these proceedings are currently pending in the trial court.

have provided "mitigation as 'strong provocation.' " In her motion, she pointed out that the trial court "inform[ed] defendant of a remedy in which [she] may take as to pursue the DNA forensic testing" of the hammer and stated she was "follow[ing] the feedback" from the trial court by filing the instant motion.

¶ 13 Defendant attached to her motion portions of her 2015 postconviction petition; an inventory log listing evidence recovered, including "[o]ne hammer with a wooden handle recovered on parkway" identified by inventory number; photographs of the hammer; photographs of her broken car windshield; excerpts from the trial court's order summarily dismissing her initial postconviction petition, including the footnote regarding filing a section 116-3 motion for forensic testing; and excerpts of her daughter's trial testimony.

¶ 14 On November 21, 2016, the State filed a motion to dismiss defendant's section 116-3 motion, arguing that defendant's motion failed to meet the threshold requirements set forth in the statute because identity was not an issue at trial in light of defendant's testimony that she acted in self-defense.

¶ 15 On January 20, 2017, the trial court granted the State's motion and dismissed defendant's section 116-3 motion. Defendant timely appealed.

¶ 16 On appeal from the denial of her motion for forensic testing, defendant contends she is entitled to forensic testing on the hammer found at the scene because the identity of the initial aggressor was at issue at trial and the requested testing has the potential to produce evidence that is new, noncumulative, and materially relevant to her claim of self-defense and, "thus, a claim of actual innocence."

¶ 17    As an initial matter, the parties dispute whether the instant appeal should be dismissed as moot. The State argues the appeal is moot because the hammer has been destroyed. It attached as an exhibit to its brief on appeal a four-page printout document entitled "Chain of Custody Report" from the Chicago Police Department (CPD) "Clear" electronic inventory tracking system. The report shows that the "hammer with wooden handle recovered on the parkway," with an inventory number matching that of the hammer defendant seeks to test, was eligible for destruction on January 25, 2018. It also shows the hammer's status as "destroyed" and the "disposition" of the hammer was "closed" on January 26, 2018. The State asks that this court take judicial notice of the report and dismiss defendant's appeal as moot because the CPD report for the hammer shows it was destroyed and thus cannot be subject to testing pursuant to section 116-3. The State argues this court therefore cannot grant the relief sought by defendant. See *People v. Hill*, 2011 IL 110928, ¶¶ 6-7 ("The mootness doctrine provides that we must dismiss an appeal when the issues involved have ceased to exist because intervening events have made it impossible for us to grant effectual relief.").

¶ 18    Defendant responds that the State's argument is based on the State conducting an "extrajudicial investigation" into the hammer and would require this court to take judicial notice of unsigned hearsay police reports that were never presented to the trial court or provided to defense counsel to assess their accuracy.

¶ 19    We agree with defendant that the report provided by the State is not a document of which we may take judicial notice. "A reviewing court may take judicial notice of matters not previously presented to the trial court when the matters are capable of instant and unquestionable demonstration." *People v. Boykin*, 2013 IL App (1st) 112696, ¶ 9 (citing *People v. Davis,* 65 Ill.

2d 157, 162-63 (1976)). We acknowledge that the alleged destruction of the hammer occurred after the proceedings in the trial court and, consequently, could not have been presented to the trial court. However, we cannot say that the unsigned, unverified document provided by the State is "readily verifiable from sources of indisputable accuracy." *Davis*, 65 Ill. 2d at 165. As such, we cannot consider the printout, which is outside the record on appeal, and we must necessarily reject the State's mootness argument. See *e.g.*, *People v. Newbolds*, 364 Ill. App. 3d 672, 676 (2006) (a court of review "may not consider matters not of record").

¶ 20    Turning to the merits of defendant's motion, we find she failed to satisfy the requirements of section 116-3. Section 116-3 of the Code sets forth "the prerequisites a defendant must meet in order to establish that [s]he is entitled to, *inter alia*, postconviction forensic testing." *People v. Smith*, 2014 IL App (1st) 113265, ¶ 19. Subsection 116-3(a), in relevant part, provides that a defendant may make a motion in the trial court for fingerprint or DNA testing "on evidence that was secured in relation to the trial *** which resulted in his or her conviction" if the evidence was not subject at the time of trial to the requested testing. 725 ILCS 5/116-3(a)(1) (West 2016).

¶ 21    Subsection 116-3(b) states that the defendant must present a *prima facie* case that "(1) identity was the issue in the trial or guilty plea" that resulted in her conviction, and "(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect." 725 ILCS 5/116-3(b) (West 2016).

¶ 22    Once the defendant has established a *prima facie* case, subsection 116-3(c) provides the trial court shall allow the requested testing upon a determination that, as relevant here: (1) "the result of the testing has the scientific potential to produce new, noncumulative evidence" that is

"materially relevant to the defendant's assertion of actual innocence *** even though the results may not completely exonerate the defendant"; and (2) the requested testing "employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116-3(c)(1), (2) (West 2016). We review *de novo* the court's denial of a motion for forensic testing of evidence. *People v. Stoecker*, 2014 IL 115756, ¶ 21.

¶ 23    Defendant fails to state a *prima facie* case for forensic testing because identity was not an issue at trial, as required by section 116-3(b)(1). At trial, defendant asserted she acted in self-defense. In doing so, she admitted to throwing drain cleaner on Rogers and firing her gun, the conduct underlying her heinous battery and aggravated discharge of a firearm convictions. Nevertheless, defendant argues that, in light of her testimony that she acted in response to Rogers threatening her and her daughter with a hammer, the identity of the initial aggressor was at issue at trial, and therefore she meets the requirements of section 116-3(b). We are unpersuaded by this argument.

¶ 24    "When the legislature required a showing that identity was the issue at the trial that led to the conviction, it sought to guard against frivolous requests by limiting the remedy to those cases where identity was truly at issue, cases where the use of new technology could test properly preserved [evidence] to either confirm or decidedly negate other identification evidence that produced the conviction." *People v. Urioste*, 316 Ill. App. 3d 307, 313 (2000). Identity is deemed to have been "at issue" at trial when the perpetrator's identity was "disputed or in question." *People v. Grant*, 2016 IL App (3d) 140211, ¶ 18. There is a sufficient showing that identity was an issue at trial where the defendant denied committing the crime at trial. *Grant*, 2016 IL App (3d) 140211, ¶ 18. By contrast, where the defendant "contests guilt based upon *self-defense*, compulsion,

entrapment, necessity or a plea of insanity, identity ceases to be an issue," and she is precluded from later utilizing section 116-3 for postconviction forensic testing. (Emphasis added.) *Urioste*, 316 Ill. App. 3d at 316.

¶ 25    As noted, defendant acknowledged she threw the drain cleaner that maimed Rogers and fired a shot, and proceeded to trial on a theory of self-defense.[3] Given this affirmative defense, the identity of the perpetrator was not in question at trial. At no point did defendant deny committing the crime; rather, she argued at trial that her use of force against Rogers was justified. Defendant's contention that the identity of the initial aggressor was the central issue at trial does not comport with the plain language of the statute or the relevant authority regarding use of the term "identity." See *e.g.*, *People v. Hockenberry*, 316 Ill. App. 3d 752, 756 (2000) ("Customarily, when courts speak of 'identity' in a criminal case, they are referring to whether the defendant was indeed the perpetrator or whether somebody else committed the crime"). Given that defendant contested her guilt based on self-defense, she may not now avail herself of postconviction forensic testing pursuant to section 116-3. See *Urioste*, 316 Ill. App. 3d at 316. Accordingly, the trial court's denial of defendant's section 116-3 motion for forensic testing was proper.

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.

---

[3] Self-defense is an affirmative defense which, if found, provides legal justification for the perpetrator's use of force against another. 720 ILCS 5/7-1(a) (West 2010); *People v. Gray*, 2017 IL 120958, ¶ 50.