2022 IL App (1st) 211236-U
Order filed: July 28, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1236

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 10 CR 00649 |
| CHARLIS HARRIS, | ) ) | Honorable Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Dismissal of defendant's postconviction petition at the second stage is affirmed, where defendant did not make a substantial showing that she was prejudiced by her trial counsel's performance and her due process claim fell outside the scope of the Post-Conviction Hearing Act.

¶ 2    Defendant-appellant, Charlis Harris, appeals from the second-stage dismissal of the petition she brought pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq*. (West 2014)). For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with attempted first degree murder, heinous battery, aggravated discharge of a firearm, aggravated unlawful use of a weapon (AUUW), and defacing

the identification marks of a firearm. Each count related to alleged actions by the defendant on or about March 24, 2010. The matter proceeded to a bench trial in November and December of 2012.

¶ 4      At trial, the trial court heard two accounts of an incident that took place on March 24, 2010. The State's evidence showed that defendant and the victim, Serretta Rogers, both had relationships with Jason Smith. Based on these relationships, defendant and Rogers did not get along, which culminated in a physical altercation on March 13, 2010. On March 24, 2010, defendant, still angry about the prior altercation, confronted Rogers while the two were each inside their respective vehicles in the parking lot of a restaurant. Rogers, who was with her daughter Keonna King, drove away and defendant followed them home, repeatedly ramming the rear of Rogers's vehicle on the way. Defendant nearly pinned Rogers inside of her vehicle once they arrived at Rogers's residence. Defendant doused Rogers's face, ear, and hair with drain cleaner containing sulfuric acid, doused her again with drain cleaner as she ran away, shot a bullet in her direction as she attempted to enter her home, threw acid on Rogers's vehicle, and struck the vehicle with a hammer.

¶ 5      Rogers spent three weeks in the hospital and suffered burns and scarring to her face, hair, and lower back, and required at least three surgical skin grafts and additional minor surgeries on her face. Rogers denied having a hammer that day. The police recovered a hammer from the parkway in front of Rogers's residence and a second hammer from defendant's purse. The police also recovered a handgun from defendant's purse. The windshield and driver-side window on Rogers's vehicle were damaged. The windshield on defendant's vehicle was also broken.

¶ 6      Defendant presented evidence that Rogers and King attacked defendant on March 13, 2010, after which defendant was treated for a two-centimeter wound to her forehead. On March 24, 2010, Rogers initiated the altercation by taunting and spraying mace on defendant and her young daughter, Tammesha Watkins, as they sat in their vehicle at the restaurant. Defendant, with

Watkins in her vehicle, followed Rogers home so she could get her license plate number and call the police. Rogers repeatedly slammed on her brakes, causing defendant's vehicle to hit Rogers's vehicle. Once at Rogers's residence, Rogers and her family confronted defendant and Watkins with a hammer, knife, bat, and golf club. Rogers hit defendant's windshield with a hammer and attempted to strike Watkins with the hammer. In self-defense, defendant threw a bottle of drain cleaner at Rogers. Rogers ran into her residence and dropped her hammer in the parkway. Rogers's family members were still outside so defendant fired a bullet into the air in an attempt to ward them off. She then took a hammer from her glove compartment and struck Rogers's vehicle with it to keep the family members away from her. She then left the scene.

¶ 7    The trial court did not find defendant's self-defense testimony credible. It found defendant guilty of heinous battery, aggravated discharge of a firearm, and AUUW. The court denied defendant's motion for new trial, finding her self-defense claim "laughable." It subsequently sentenced defendant to 13 years for heinous battery, 5 years for aggravated discharge of a firearm, and 2 years for AUUW. The 5- and 2-year sentences were to be served concurrently to each other and consecutively to the 13-year sentence. We affirmed on direct appeal but—based on the one-act, one-crime doctrine—vacated defendant's conviction and sentence for AUUW. *People v. Harris*, 2014 IL App (1st) 120643-U, ¶ 79.

¶ 8    Defendant subsequently filed both (1) a petition for postconviction relief pursuant to the Act, raising multiple claims of ineffective assistance of counsel; and (2) a motion for a corrected mittimus and sentence. Defendant argued in her postconviction petition—*inter alia*—that her trial counsel was ineffective for failing to investigate or present at trial fingerprint or DNA evidence from a hammer that was found on Rogers's lawn. She argued that there was a reasonable basis to believe that fingerprint or DNA testing would have tied the hammer to Rogers, thereby supporting

defendant's trial testimony that Rogers threatened her daughter with a hammer. The trial court summarily dismissed the postconviction petition and denied the motion for a corrected mittimus and sentence. It included a footnote in its order stating that if defendant "truly believes that the victim's DNA is present" she could "file a motion for forensic testing pursuant to Section 116-3 of the Code of Criminal Procedure." 725 ILCS 5/116-3 (West 2012). Defendant previously appealed both orders, and those appeals were consolidated.

¶ 9    On May 18, 2018, this court affirmed the trial court's denial of defendant's motion for a corrected mittimus but reversed the first-stage dismissal of her postconviction petition, finding that her claims of ineffective assistance of counsel, taken together, satisfied the low threshold standard for first-stage proceedings. *People v. Harris*, 2018 IL App (1st) 152241-U, ¶ 28. We therefore remanded for second-stage postconviction proceedings. *Id.*, ¶ 39.

¶ 10    While defendant's consolidated appeal was pending, on March 9, 2016, she filed a *pro se* motion for forensic testing pursuant to section 116-3. Therein, she requested that the hammer recovered from the parkway be tested for Rogers's DNA, fingerprints, spatters of drain cleaner, "and/or any other possible DNA that could be obtained." Defendant argued that at trial, she raised an affirmative defense of self-defense based on Rogers threatening her and her daughter with a hammer. However, Rogers had denied possessing a hammer. Thus, defendant argued, if Rogers's DNA was found on the hammer, and had that evidence been presented at trial, it would have provided "mitigation as 'strong provocation.' " In her motion, she pointed out that the trial court "inform[ed] defendant of a remedy in which [she] may take as to pursue the DNA forensic testing" of the hammer and stated she was "follow[ing] the feedback" from the trial court by filing the instant motion.

¶ 11    On November 21, 2016, the State filed a motion to dismiss defendant's section 116-3

motion, arguing that it failed to meet the threshold requirements set forth in the statute because identity was not an issue at trial considering defendant's testimony that she acted in self-defense. On January 20, 2017, the trial court granted the State's motion and dismissed defendant's section 116-3 motion. Defendant timely appealed.

¶ 12    On appeal, the State argued—*inter alia*—that the issue was moot because the hammer had been destroyed. It attached as an exhibit to its brief on appeal a four-page document entitled "Chain of Custody Report" from the Chicago Police Department (CPD) "Clear" electronic inventory tracking system. The report showed that the "hammer with wooden handle recovered on the parkway," with an inventory number matching that of the hammer defendant sought to test, was eligible for destruction on January 25, 2018. It also showed the hammer's status as "destroyed" and the "disposition" of the hammer was "closed" on January 26, 2018. The State asked this court take judicial notice of the report and dismiss defendant's appeal as moot because the CPD report for the hammer showed it was destroyed and thus could not be subject to testing pursuant to section 116-3.

¶ 13    This court declined to take judicial notice of this fact and dismiss the appeal, instead ruling on the merits that defendant failed to state a *prima facie* case for forensic testing because identity was not an issue at trial, as required by section 116-3(b)(1). *People v. Harris*, 2020 IL App (1st) 170254-U, ¶¶ 19-25. Noting that defendant asserted at trial that she acted in self-defense we further recognized that where a defendant contests guilt based upon self-defense identity ceases to be an issue and that defendant is precluded from later utilizing section 116-3 to seek postconviction forensic testing. *Id*. ¶ 24. Accordingly, we concluded that the trial court's denial of defendant's section 116-3 motion for forensic testing was proper. *Id*. ¶ 25.

¶ 14    The matter then proceeded to second-stage proceedings in the trial court on defendant's

postconviction petition. The trial court appointed postconviction counsel to represent defendant, and that counsel filed both a supplemental petition and a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The supplemental petition included a claim that defendant's due process rights were violated when the police and the State destroyed the hammer before it could be tested for DNA or fingerprints. The State filed a motion to dismiss defendant's *pro se* and supplemental petitions. On September 14, 2021, the trial court granted the State's motion to dismiss after finding that the hammer was not destroyed in bad faith and that even if Rogers's DNA or fingerprints were found on the hammer that fact would not have changed the court's ruling finding defendant guilty. Defendant timely appealed.

¶ 15 "The Post-Conviction Hearing Act *** provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. [Citations.] A postconviction action is not an appeal from the judgment of conviction, but is a collateral attack on the trial court proceedings." *People v. Tate*, 2012 IL 112214, ¶ 8. The petition may be dismissed at the first stage if it is frivolous or patently without merit, otherwise it advances to the second stage. 725 ILCS 5/122-5 (West 2018). At the second stage, the defendant must make a substantial showing of a deprivation of constitutional rights or the petition is dismissed. *People v. Dupree*, 2018 IL 122307, ¶ 28. If such a showing is made, the postconviction petition advances to the third stage where the court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2018).

¶ 16 At the second stage, " '[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the [postconviction] court to engage in any fact-finding or credibility determinations.' " *Dupree*, 2018 IL 122307, ¶ 29 (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). Rather, at the second stage of proceedings the

postconviction court takes "all well-pleaded facts that are not positively rebutted by the trial record" as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Thus, the substantial showing of a constitutional violation that must be made at the second stage is " 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle [defendant] to relief.' " (Emphasis omitted.) *Coleman*, 183 Ill. 2d at 385 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35).

¶ 17   "At the second stage of postconviction proceedings, the State may file a motion to dismiss the petition." *People v. Graham*, 2012 IL App (1st) 102351, ¶ 31. A petition may be dismissed at the second stage only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). A second-stage dismissal of a postconviction petition is reviewed *de novo*. *Coleman*, 183 Ill. 2d 366, 389 (1998). We may affirm a second-stage dismissal "on any basis supported by the record." *People v. Stoecker*, 384 Ill. App. 3d 289, 292 (2008).

¶ 18   On appeal, defendant first contends that the trial court improperly dismissed her claim of ineffective assistance of counsel at the second stage. A claim of ineffective assistance of counsel is judged according to the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Lawton*, 212 Ill. 2d 285, 302 (2004). To obtain relief under *Strickland*, a defendant must prove defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused defendant prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different. *People v. Wheeler*, 401 Ill. App. 3d 304, 313 (2010). Because defendant must make a substantial showing of a constitutional violation to avoid dismissal at the second stage, it is appropriate at this stage to require defendant "to 'demonstrate' or 'prove' ineffective assistance by 'showing' that

counsel's performance was deficient and that it prejudiced the defense." *People v. Tate*, 2012 IL 112214, ¶ 19.

¶ 19    While defendant must establish both prongs of the two-part test discussed above, a reviewing court need not address counsel's alleged deficiencies if the defendant fails to establish any prejudice. See *Strickland,* 466 U.S. at 687; *People v. Edwards,* 195 Ill. 2d 142, 163 (2001). Indeed, our supreme court has held that "*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice." *People v. Bew,* 228 Ill. 2d 122, 135 (2008). A defendant has the burden of establishing any such prejudice. *People v. Glenn,* 363 Ill. App. 3d 170, 173 (2006). Thus, at the second stage of these postconviction proceedings, defendant had the burden of making a substantial showing that a reasonable probability exists that the outcome of trial would have been different had his trial counsel's performance been different. *People v. Harris,* 206 Ill. 2d 293, 307 (2002). A " 'reasonable probability' " is " 'a probability sufficient to undermine confidence in the outcome' " of the proceeding. *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694).

¶ 20    Defendant claims that she showed prejudice resulting from her trial counsel's failure to investigate or present at trial fingerprint or DNA evidence from the hammer, because "if forensic testing revealed Rogers' fingerprints and/or DNA on the hammer, there is certainly a substantial showing of a reasonable probability that the outcome of the trial would have been affected." We disagree.

¶ 21    In *People v. Scott*, 2011 IL App (1st) 100122, ¶¶ 30-31, this court affirmed the first-stage dismissal of a postconviction petition alleging ineffective assistance for the failure to pursue DNA testing on a blue shirt allegedly worn by the shooter in a murder, where the petition asserted that "the presence or absence of his DNA on the blue shirt is highly relevant to the case as the presence

of someone's DNA other than defendant's on the shirt suggests that someone else was the shooter." This court reasoned that because no DNA testing had yet been performed, it was unknown if sufficient DNA remained on the shirt to be tested and it was also unclear that any test results would be exculpatory; as such, any argument regarding exculpatory evidence contained on the blue shirt was speculative and defendant therefore could not establish prejudice under *Strickland*. *Id*. ¶ 31.

¶ 22    In *People v Johnson*, 2021 IL 126291, ¶¶ 1, 58, our supreme court approved the *Scott* decision's reasoning in rejecting a defendant's argument—on direct appeal from a conviction for armed robbery—that his trial counsel was ineffective for failing to have swabs taken from a pistol found at the scene tested for DNA. The court concluded that the defendant in that case "was unable to demonstrate prejudice for purposes of *Strickland*" where:

> "Although [the] pistol was swabbed for potential DNA, it is unknown whether the swabs contain DNA sufficient for testing, let alone whether the results would be exculpatory. Furthermore, because there is no exculpatory evidence for us to consider, any opinion that could be made with respect to prejudice would be advisory. Defendant argues that *Scott*'s rationale should be limited to its facts, but its pertinent holding was not factually dependent. It was rather a practical application of the well-established rule that prejudice under *Strickland* cannot be based on 'mere conjecture or speculation.' " *Id*. ¶ 58.

¶ 23    Similarly, here defendant merely speculates that forensic testing *might* have revealed Rogers's fingerprints and/or DNA on the hammer, such that there is a reasonable probability that the outcome of the trial would have been affected by such evidence. Because this argument is based on mere conjecture and speculation, we reject it. Furthermore, while defendant asserts that "the facts of this case are distinguishable from both *Johnson* and *Scott*," our supreme court rejected the notion that similar claims involving never-undertaken forensic testing are "factually

dependent." *Id*. Finally, it is true that we previously considered and rejected the State's reliance upon the reasoning in the *Scott* decision when we reversed the first-stage dismissal of defendant's postconviction petition and remanded for second-stage proceedings. *Harris*, 2018 IL App (1st) 152241-U, ¶¶ 30-34. As we explained in our prior decision, however, we did so largely based on the lower standard applicable at the first stage of postconviction proceedings and explicitly expressed no opinion on the ultimate merits of this claim. *Id*.; *Tate*, 2012 IL 112214, ¶ 19 ("A different, more lenient formulation applies at the first stage."). We also reached our prior conclusion without the benefit of our supreme court's decision in *Johnson*. It is for these reasons that we come to our present conclusion with respect to this claim at the second stage.

¶ 24   Defendant next claims that the trial court improperly dismissed her claim that her due process rights were violated by the premature destruction of the hammer. However, we agree with the State that this claim was properly dismissed as it is outside of the scope the type of claims that can be raised under the Act. While the State did not raise this argument below, we reiterate that the second-stage dismissal of a postconviction petition is reviewed *de novo* (*Coleman*, 183 Ill. 2d at 389), and we may affirm a second-stage dismissal "on any basis supported by the record" (*Stoecker*, 384 Ill. App. 3d at 292).

¶ 25   The Act specifically provides that "any person imprisoned in the penitentiary may institute a proceeding under this Article if the person asserts that *** in *the proceedings which resulted in his or her conviction* there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." (Emphasis added.) 725 ILCS 5/122-1(a)(1) (West 2018). Illinois courts have repeatedly concluded that claims regarding the purported denial of constitutional rights in proceedings following such original proceedings are simply beyond the scope of the Act. *People v. Flores*, 153 Ill. 2d 264, 277 (1992) (noting that the purpose of a

postconviction proceeding is to permit inquiry into constitutional issues involved in the "original" proceeding, and therefore claims of ineffective assistance in postconviction proceedings are beyond the scope of the Act); *People v. Jones*, 321 Ill. App. 3d 515, 519 (2001) (same); *People v. Keller*, 353 Ill. App. 3d 830, 833 (2004) (defendant's claim that the Department of Corrections misinterpreted his sentence was not cognizable under the Act because it did "not relate to any flaw in the proceedings before his conviction."). Here, it is undisputed that the hammer was destroyed after defendant was convicted and after defendant's direct appeal was resolved, and as such her constitutional claims regarding that destruction were not properly brought under the Act and were properly dismissed.

¶ 26    Notably, this includes defendant's claim that the destruction of the hammer also constituted a due process violation because it interfered with her appeal rights as the destruction occurred while her prior appeals from the first-stage dismissal of her postconviction petition and the denial of her motion for forensic testing were still pending. As an initial matter, this argument was not raised below and it is axiomatic that "claims not raised in the defendant's postconviction petition may not be raised for the first time on appeal from the circuit court's dismissal of that petition." *People v. Cole*, 2012 IL App (1st) 102499, ¶ 13. Furthermore, each of these appeals involved claims arising out of proceedings following the original proceedings which resulted in her conviction and are not cognizable under the Act.

¶ 27    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 28    Affirmed.